Vincent O'Brien, Appellee, v. City of Chicago, and Rector of Church Wardens and Vestrymen of Church of Holy Nativity, Appellants.

Gen. No. 45,575.

Opinion filed April 15, 1952.

Released for publication May 27, 1952.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, for certain appellant; L. LOUIS KARTON, Head of Appeals and Review Division, and ARTHUR MAGID, Assistant Corporation Counsel, both of Chicago, of counsel. SCHUYLER, RICHERT & STOUGH, of Chicago, for certain other appellants; JAY STOUGH, of Chicago, of counsel.

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, for appellee; RICHARD L. WATTLING, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a declaratory judgment against defendants, holding invalid the approval by

the City Council of the City of Chicago of a plat of resubdivision establishing a church site at the southwest corner of 93rd street and Pleasant avenue, Chicago. Plaintiff owns and resides on property adjoining the proposed church site and seeks to prevent the construction of a church thereon.

The Church of the Holy Nativity, an Episcopal congregation, referred to hereafter as "defendant church," bought the property in question for the purpose of constructing a church building thereon. It is in a district zoned for single-family-residences. It is bounded on two sides by streets and on the other two sides by private property. There are no alleys in the block. An ordinance of the City of Chicago provides that in single-family-residence districts, such as this, a church may be erected "on a lot . . . entirely surrounded by streets or alleys . . . ." Municipal Code of Chicago, ch. 194–A, sec. 5 (2). In order to comply with this ordinance, the defendant church filed a plat of resubdivision, dividing the church property into two lots, one of which is a corner lot. The plat shows the dedication of alleys adjoining the south and west boundaries of this corner lot and thus, according to defendants, it becomes a lot "entirely surrounded by streets or alleys" and available for a church site. After the filing of this plat of resubdivision, an order was passed by the City Council on April 13, 1950, as follows:

"Ordered, That the Superintendent of Maps, Ex Officio Examiner of Subdivisions, is hereby ordered and directed to approve a plat of resubdivision for a church site at the southwest corner of W. 93rd Street and S. Pleasant Avenue . . . ."

It is the contention of defendants, including the city, that these actions of the City Council and the defendant church constituted a complete conveyance in fee simple to the city of the said alleys. Plaintiff,

however, contends that these proceedings constituted at most an offer of dedication by defendant church not accepted by the City Council order and therefore still revocable and incomplete. Defendant church took all the necessary statutory steps to have the resubdivision properly platted, acknowledged and recorded. Under the present Illinois statutes, this constituted a continuing offer to allow the land designated as alleys to be used by the public for alleys. The property so dedicated cannot be vacated without the approval of the City of Chicago. (Ch. 109, sec. 6, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 102.06].)

The City Council order of April 13, 1950 was an acceptance of defendant church's offer which operated to complete the dedication of the alleys. Municipalities may accept dedication of streets and alleys by order or resolution of the proper authorities as well as by actually improving the land in question. *People v. Johnson,* 237 Ill. 237, 241; *Kimball v. City of Chicago,* 253 Ill. 105, 112–14. In the instant case, the order of the City Council was an acceptance. The subdivision plat was approved for "a church site." The City Council understood, and obviously passed the ordinance, in order that this church might lawfully be built in accordance with the Chicago Zoning Ordinance, that is, on a site surrounded by streets and alleys. Hence, the approval of the plat for a church site could only be on the assumption that the order directing the Superintendent of Maps to approve the plat constituted an acceptance of the dedication. Any other supposition would lead to the conclusion that the Chicago City Council was aiding and abetting a violation of its own zoning ordinance.

Plaintiff maintains that even if the alleys dedicated by defendant church have been accepted by the city, the church's lot still does not qualify under the zoning ordinance as a church site since the resubdivi-

49

sion of the lot and the dedication of the alleys were mere devices to circumvent the zoning laws. His argument is in effect that the zoning ordinance did not contemplate the erection of churches on property within single-family-residence districts, except where such property was surrounded by ''actual existing streets and alleys,'' or where the dedication of such streets and alleys was necessary to meet existing needs, exclusive of those which would be created by the erection of a church building. The zoning ordinance does not exclude churches from all lots in single-family-residence areas not surrounded by streets and alleys, nor does it require that churches be located only where there is an independent showing of a public need for surrounding streets and alleys. What is required is that as a condition to the use of any such lot, there must be streets and alleys.

■■ The judgment of the proper municipal authorities as to the public necessity for a street or alley is, if fairly exercised, not subject to the control of the courts. *Hoerrmann v. Wabash Ry. Co.,* 309 Ill. 524, 531. There is no showing of any abuse of discretion by the City Council in interpreting the zoning ordinance so as to allow the dedication of alleys for the sole purpose of allowing defendant church to erect a church building. On the contrary, the city was following a long established practice in thus interpreting the ordinance. This practice appears to have been followed in *Phelps v. Board of Appeals of the City of Chicago,* 325 Ill. 625. Long continued, uniform construction of a statute by executive officers must be accorded great weight by the judiciary in interpreting such statutes unless a contrary interpretation is clearly required by the words of the statute. *Mathews v. Shores,* 24 Ill. 27; *People v. Fidelity & Casualty Co. of New York,* 153 Ill. 25; *People v. Illinois Central R. Co.,* 273 Ill. 220. A recent decision in this court applied

50

this rule in a case resembling the instant case on its facts. *Dalton v. Joseph Lumber Co.,* 340 Ill. App. 267. ██ ██ Plaintiff's interpretation of the ordinance might well exclude churches from a well developed single-family-residence district, and the validity of the ordinance would then become questionable. *State v. Hill,* 59 Nev. 231; *State v. Joseph,* 139 Ohio St. 229; *State v. City of Tampa,* 48 So. (2d) 78 (Fla. 1950). The ordinance as we have interpreted it, imposes a condition with respect to the site on which a church may be erected. There is no question of the city's right to exercise its police power in this fashion provided the conditions are reasonably related to the public health, morals, comfort, safety or welfare. See *City of Sherman v. Simms,* 143 Tex. 115, 183 S. W. (2d) 415; *Pentecostal Holiness Church of Montgomery v. Dunn,* 248 Ala. 314. If the purpose of the restrictions is related to the traffic requirements which might be created by the construction of a new church or to the necessity for a space between the church structure and adjoining property, such purpose is amply fulfilled by adequate dedication of streets and alleys on a proposed site.

In this respect it is well to note that of the many cases we have examined, there is not a single instance, with the exception of a decision by an intermediate court in California (*Corporation of Presiding Bishop v. City of Porterville,* 90 Cal. App. (2d) 656), where the courts have sustained prohibitions on the erection of churches in any area. *State ex rel. Howell et al. v. Meador,* 109 W. Va. 368, 154 S. E. Rep. 876; *State v. Hill, supra; State v. Joseph, supra; City of Sherman v. Simms, supra; Ellsworth v. Gercke,* 62 Ariz. 198; *Pentecostal Holiness Church v. Dunn, supra; State v. City of Tampa, supra.* Obviously, the courts feel that wherever the souls of men are found, there the house of God belongs. Text writers support the view which

51

courts generally have taken. In Bassett on Zoning (1936), p. 200, the author says:

"Practically all zoning ordinances allow churches in all residence districts. It would be unreasonable to force them into business districts where there is noise and where land values are high, or into dense residence districts (in cities which have established several kinds of such districts). Some people claim that the numerous churchgoers crowd the streets, that their automobiles line the curbs, and that the music and preaching disturb the neighbors. Communities that are too sensitive to welcome churches should protect themselves by private restrictions."

Yokely, Zoning Law & Practice (1948), sec. 183, p. 367, says:

"Since the advent of zoning, churches have been held proper in residence districts. Both the early decisions and the recent ones frown on the exclusion of churches from residence districts, in spite of the temporary inconvenience sometimes experienced in the parking of automobiles and other inconveniences incident to the gathering of crowds in residence areas."

This is not a large church. It will seat approximately 300 persons and it is estimated that space for 20 to 30 cars will be required on Sundays or meeting days. Including the lot on the west, also owned by defendant church, the congregation will have approximately 400 feet of curb parking space next to its own property plus almost 300 feet more of potential parking space in the alleys. This could easily accommodate the estimated 20 to 30 cars. Moreover, the church property is located in an outlying section and in many respects is the kind of church that comes well within the language of the court in the case of *State v. Joseph*, 139 Ohio St. 229. There, the court considered the ques-

tion of possible traffic congestion and repudiated it as a ground for refusing permission to erect a church, stating that any prospective increase in traffic would occur mostly on Sunday mornings, a time when ordinary traffic would be greatly diminished and any danger to children going to and from school entirely eliminated. The court then said:

"Of all nonresidential uses, a small suburban church would seem to present a minimum of objections. . . . How does the case stand with respect to the protection of public morals and the general welfare? The church in our American society has traditionally occupied the role of both teacher and guardian of morals. . . . Fully to accomplish its great religious and social function, the church should be integrated into the home life of the community which it serves. Churches in fitting surroundings are an inspiration to their members and to the general public. If located in the residential district—space, perspective, greenswards and trees aid in setting off the beauty of the building and thereby increasing its inspiration. . . .

". . . It is true that many people prefer not to reside next door to a church. But the way legally to effectuate this desire is by private mutual covenants between property owners imposing appropriate servitudes on the land. We must not 'employ the new device of zoning to make exclusive districts much more exclusive.' Bassett on Zoning, page 72. We do not believe it is a proper function of government to interfere in the name of the public to exclude churches from residential districts for the purpose of securing to adjacent landowners the benefits of exclusive residential restrictions."

Plaintiff further argues that the city is not bound to maintain the alleys and that neither the city nor the defendant church will make any effort to do

so. The evidence in the record does not warrant this assumption as against the actual dedication of the property and the acceptance by the city of this property as a church site. It is hardly to be supposed that either the city or the church would proceed with the opening of alleys while the validity of the church's claim to build on the site was still in litigation.

█ Plaintiff's final contention is that to allow construction of a church at this point would be "spot" zoning. By "spot" zoning he means that a particular piece of property is specially zoned to suit the individual purpose of the owner of that property. This is not the case here. Under our interpretation of the ordinance, all landowners dedicating streets and alleys are entitled to present their plats to the City Council for acceptance as church sites. The City Council could not arbitrarily refuse to accept the dedication in a situation where such refusal was not reasonably required for the protection of the public health, safety, welfare and morals. All persons similarly situated are thus treated alike in our interpretation.

Judgment is reversed and the cause remanded with directions to vacate the judgment heretofore entered and to enter a judgment herein, adjudging and declaring:

1. That the filing of the plat of resubdivision by defendant church constituted a dedication of the alleys indicated thereon and that the approval of said plat of resubdivision by the City Council by its order of April 13, 1950 constituted valid acceptance of said dedication by the City of Chicago.

2. That by said dedication and acceptance, lot No. 1 shown on said plat of dedication is available as a site for the construction of a church building thereon and is in compliance with the present zoning laws relating thereto.

54

■■■■■■■■

3. For such other findings and proceedings as are in accordance with the views herein expressed.

*Judgment reversed and cause remanded with directions.*

Robson, J., concurs.

Tuohy, P. J., took no part.