Froessel, J.
This is an appeal pursuant to leave of the Appellate Division, Fourth Department, from an order of that court which unanimously affirmed an order, entered in an article 78 proceeding, of Special Term, Monroe County. Special Term dismissed the petition on the merits on the ground that no , triable issue of fact had been raised, and affirmed respondents’ decisions denying petitioners’ application for a permit to build a church and school with necessary accessory uses and for a variance.
Petitioners allege that the population of the Town of Brighton (a suburb of Rochester) has been rapidly increasing and is now about 23,000, of whom more than 6,000 are Catholic. At present there is in Brighton but one Catholic church, Our Lady of Lourdes. This church was erected in 1928, and is inconveniently located with respect to worshippers residing in the eastern part of the town and is inadequate to accommodate them. The only parochial school in the town is attached to Our Lady of Lourdes, and was erected in 1948. It is also inconvenient to and unable to accommodate Catholic pupils residing in eastern Brighton. In 1953 the Diocese of Rochester (hereinafter called the Diocese), recognizing the inadequacy of existing facilities for members of its faith, established a new parish in the eastern part of the town.
After a diligent search, the only suitable property found to be centrally located and available (free from private restrictions) in the new parish was a tract of 14 acres owned by the estate of William A. E. Drescher, deceased, fronting on East Avenue in the town. On August 30, 1954 the Diocese agreed to purchase the Drescher property, and entered into a contract which conditioned the sale upon the Diocese’s obtaining a permit from the planning board of the town to erect and use a church and school on the western portion of the property. The executor of the estate of William A. E. Drescher has joined in all the proceedings to date.
In 1933 the town board of Brighton adopted a zoning ordinance which, together with all amendments thereto and the *515 zoning map of the town in effect at the time of the hearing, is incorporated by reference into the petition.
Section 2 of the ordinance states:
“ For the purpose of promoting the public health, safety, morals or the general welfare * * * the Town of Brighton
is hereby divided into four classes of districts, termed respectively :
(1) Residential Districts
(2) Commercial Districts
(3) Industrial Districts
(4) Agricultural Districts
Section 18 further subdivides the residential districts into three classes known as “A”, “ B ”, and “ G Section 19 defines the uses permitted in a Class A area, with which we are concerned, and provides:
“ In Class A, no structure or the premises can be used and no structure shall be erected or altered which is arranged, intended or designed to be used in whole or in part for other than one of the following uses and accessory uses:
(1) Single family one and two story or two and one-half story detached dwelling, with private garage.
(2) Educational or Religious Building, Fire Station, Town Municipal Building, Police Station, Park and Park buildings, if approved by the Planning Board.” (Emphasis supplied.)
The Drescher property is located in a Class A residential district, and the Diocese accordingly made written application to the planning board and the board of appeals as follows: (1) to subdivide the property in order to set apart a large house located in the northwest corner as a life estate for the widow of William A. E. Drescher, deceased; (2) for “ permission to construct on and use the remainder of the west parcel ” for a Roman Catholic church and school; and (3) to subdivide the east and west parcels as shown by the accompanying map so as to provide two L-shaped lots on each of which there shall be one dwelling, each having a frontage on East Avenue of at least 100 feet or, in the alternative, for a variance from the provisions of the zoning ordinance permitting the continuance of said two dwellings as they now exist.
*516 The application was accompanied by a map which showed the proposed location of the church; school; meeting room; kindergarten, small games, open field and hard-top play areas; and parking lot which would accommodate 144 cars. The application stated that approximately 4 acres on the eastern part of the property are covered by title restrictions confining their use to residences only.
This application came on for a public hearing before the planning board and the board of appeals on September 14, 1954, at which time all the interested parties were heard. The minutes of that hearing are incorporated by reference into the petition. At this hearing, Mr. Ely, chairman of the planning board, stated that the Diocese’s application was “ actually addressed to both the Planning Board and the Board of Appeals ”, the application for a permit being before the former. The attorney for the Diocese also stated that his application was being made under subdivision (2) of section 19 of the ordinance, and that the application for a variance “ is only an incidental matter and hinges entirely on whether or not we are permitted to use the west parcel for the construction of the school and church ”. Evidence was then presented on behalf of the Diocese to the effect that Catholic parishes are territorial and that the church should be in the center of the parish; that there would be no traffic problem; that ample parking facilities are provided; that the proposed school is to be a grade school only, eventually accommodating 300 children; that there will be little change in appearance of the property on East Avenue; and that the new parish will serve about 380 families.
A number of residents of the area were heard in opposition, and they testified as to the inconvenience, annoyance and undesirability of having this church and school in the neighborhood. A real estate appraiser testified that in his opinion the proposed church and school would depreciate neighboring property from 5% to 10%.
Thereafter on November 15, 1954 the planning board filed its decision, dated October 14, denying the Diocese’s application. This decision states that the exclusive question before the board is “ whether there should be a church and school at the applied for location ”. In answering this question in the negative, the *517 board based its decision on several explicitly stated grounds 5 (1) that the area in question has been completely built up, and that where such is the case and the locale is strictly residential in character, the imposition of a church and school would change the character of the residential use and enjoyment of the area and have an adverse effect on property values; (2) good planning, directed to enhancing property values, dictates that churches and schools should be built in areas where future residential development could accommodate itself to the church or school; and (3) good planning requires the maintenance of larger and more expensive homes which bear higher assessed values. The board stated that it was certain that the Drescher property would be subdivided and built upon, and therefore to allow a church and school at this location would result in a loss of potential tax revenue.
On the same day, a decision of the board of appeals (consisting of the same men as were on the planning board [Brighton Ordinance, § 50]) was filed, which denied the application for a variance. This decision states that, since the application for a variance was made subsidiary to and hinged entirely upon the planning board’s granting the application for a permit and, since this permission was denied, “ there is no purpose in granting or further considering the requested variance at this time ”. The board of appeals also stated that the application for a variance so as to allow a church and school on the property is also denied.
Section 53 of the ordinance provides that any determination of the planning board may be reviewed by the town board. Accordingly, on November 17, 1954 petitioners applied for a review of said decisions, and on November 26th argument was heard thereon. At this meeting, the attorney for the Diocese stated that he was not asking for a variance, but was seeking a permit pursuant to subdivision (2) of section 19 of the zoning ordinance. On December 17, 1954 the town board filed a decision affirming the determinations of the planning board and board of appeals.
On December 9, 1954 petitioners commenced a proceeding pursuant to subdivision 7 of section 267 of the Town Law and article 78 of the Civil Practice Act for an order armnlb'ng the determinations of these boards, and directing that a permit *518 issue and a variance be granted. That petition is also incorporated by reference in a second proceeding[1]. This second petition, with which we are here concerned, was verified December 29, 1954 and seeks to review the determination “ against ” the Town of Brighton, the planning board, the board of appeals and the town board. It alleges that if the planning board and the board of appeals had discretion to grant or deny the applications, said discretion was exercised in an arbitrary and unreasonable manner, and that their decisions constituted an abuse of discretion. The petition further states that the ordinance and decisions thereunder are contrary to the Constitutions of the United States and the State of New York.
The prayer for relief requests an order (1) consolidating the two petitions pursuant to section 96 of the Civil Practice Act, since they arise out of the same transaction; (2) annulling the determinations and decisions of the named respondents which denied their application ‘ ‘ and directing that a permit issue to petitioner * * * to construct, maintain and operate a church and school with incidental ” buildings, and further (3) “ directing that a variance be granted so as to permit the erection, maintenance and operation of church and school buildings and to maintain incidental dwelling structures ” on the property.
On February 11, 1955 the motion for consolidation was heard along with other motions, and it was ordered that the two proceedings be consolidated and that the later petition be deemed the petition in the consolidated proceeding. It was also ordered that the proceedings against the “ Town of Brighton ” be dismissed, and several property owners who had been permitted to intervene as respondents were authorized to answer.
Respondents’ answer to the petition sets forth a number of *519 denials and separate defenses. The first, second and third allege that the proposed playgrounds, parking lot and other combined uses are prohibited uses in a Class A district. The fourth defense alleges respondents’ good faith, and a variety of elements taken into consideration, among them: that a serious loss of revenue would result if the permit were granted; that the use of property for the proposed objectives was not contemplated in a Class A zone and that under the ordinance such structures were to be limited to the Class C zone; that the proposed buildings and parking lot would cause serious traffic problems, would have an adverse effect on property values, and would affect the development of the area. The fifth defense alleges that the constitutionality of the ordinance is not in issue because petitioners applied for a permit and a variance and therefore “ admitted the constitutionality and validity of the ordinance ”. The sixth and seventh defenses allege that the Diocese established the boundaries of its parish in its sole discretion, and by so doing it could not obtain the right to construct the proposed structures; and that the allegations of paragraph 9 of the petition, being conclusory, should be stricken. The eighth and final defense states that the petition “ does not state facts to entitle petitioners to any relief ” and asks that the petition be dismissed or an order of affirmance entered.
Special Term and the Appellate Division both held that petitioners could not attack the constitutionality of the Brighton ordinance in this proceeding because their application to the planning board was an appeal to the discretion of that body and, for that purpose, assumed the validity of the ordinance. Inasmuch as no constitutional question was involved, both courts stated that they could not substitute their judgment for that of respondents so long as there was some basis in the record for the determination, and that respondents’ decisions were not arbitrary or unreasonable. In addition, Special Term held that petitioners could not attack the ordinance as construed and applied, since no element of intentional discrimination was alleged in the petition.
It is a general rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality (Fahey v. Mallonee, 332 U. S. 245; Buck v. Kuykendall, 267 U. S. 307; Shepherd v. Mount Vernon Trust Co., 269 N. Y. 234). The proper way to raise the constitutional *520 question is by way of a separate action or proceeding- (Baddour v. City of Long Beach, 279 N. Y. 167, motion for reargument denied 279 N. Y. 794, appeal dismissed 308 U. S. 503; Matter of Romig v. Weld, 276 App. Div. 514, 517), and we are advised that such an independent action is now pending. Accordingly, many cases have stated that an application for a permit or variance under a zoning ordinance is primarily an appeal to the discretion of the board, which discretion is conferred upon it by the ordinance, and therefore by making the application the petitioner necessarily concedes, for the purpose of the application, the validity and constitutionality of the ordinance (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 501; Baddour v. City of Long Beach, 279 N. Y. 167, 177, supra; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226; Matter of Pforzheimer v. Seidman, 278 App. Div. 780; Matter of Romig v. Weld, 276 App. Div. 514, supra, motion for leave to appeal denied 277 App. Div. 833; Matter of Holy Sepulchre Cemetery v. Board of Appeals of Town of Greece, 271 App. Div. 33, 39-40). This rule has also been adopted in other jurisdictions (Strain v. Zoning Bd. of Appeals, 137 Conn. 36; Heath v. Mayor & City Council of Baltimore, 187 Md. 296, 303; State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229; Allen v. Zoning Bd. of Warwick, 75 R. I. 321, 323; see 8 McQuillin on Municipal Corporations [3d ed.], § 25.291, p. 553).
Petitioners argue, however, that since the enactment of chapter 771 of the Laws of 1952, repealing former subdivisions 7, 8 and 9 of section 267 of the Town Law, and adding new subdivision 7, under which this proceeding was specifically brought, they are entitled to raise the constitutional question here, and that the instant ordinance constitutes an unlawful delegation of legislative authority without any reasonable or ascertainable standards or guides for the exercise thereof. While there may be merit in this argument, we do not find it necessary to reach these questions, for, even if wé deem the Brighton ordinance to be valid and constitutional for the purposes of this proceeding, the instant decision must nevertheless fall.
It is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion (People ex rel. Hudson-Harlem Co. v. Walker, 282 N. Y. 400; Matter of Levy v. Board of Standards & Appeals. 267 N. Y. 347).
*521 An ordinance, constitutional on its face (or deemed so) may be construed and applied in an unconstitutional manner (Snowden v. Hughes, 321 U. S. 1; Yick Wo v. Hopkins, 118 U. S. 356; Matter of Zorach v. Clauson, 303 N. Y. 161). If the construction of an ordinance as applied to a particular piece of property and a particular set of facts is so arbitrary and unreasonable as to result in an invasion of property rights, the action of the zoning board thereunder will be invalidated (see Matter of Community Synagogue v. Bates, 1 N Y 2d 445; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 498-499, supra; City of Chicago v. Sachs, 1 Ill. 2d 342; Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, 233 Ind. 83; State v. Northwestern Preparatory School, 228 Minn. 363; Bishop of Reno v. Hill, 59 Nev. 231; Young Israel Organisation of Cleveland v. Dworkin, 133 N. E. 2d 174 [Ohio]; State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, supra).
Special Term recognized that petitioners could attack the constitutionality of the decisions herein, as distinguished from the constitutionality of the ordinance itself, but held that “ in order to invoke this principle, it must appear that there is ‘ “ an element of intentional or purposeful discrimination ” by the enforcement authorities ’ ” (207 Misc. 1023, quoting Matter of Zorach v. Clauson, 303 N. Y. 161, 174, supra). In this respect Special Term was only partially correct. The language quoted from the Zorach case was uttered in answer to the constitutional objection that the New York “ released time ” program, as administered, denied petitioners the equal protection of the law. To sustain such a claim, there had to be some showing of discrimination against petitioners as a class apart from all other persons. The instant petition also alleges that petitioners were denied the equal protection of the law, and with regard to this particular objection Special Term was correct in rejecting the claim since no discrimination is alleged. However, the instant petition also alleges that petitioners have been deprived of their property without due process of law, and that they have been deprived of their rights to the free exercise of religion and to impart and receive religious instruction and education. No discrimination need be alleged or proved to establish the claim that an ordinance has been construed and applied so as to violate such constitutional rights.
*522 The text writers agree that churches and schools should be allowed in Class A residential areas which are usually the quietest and least congested areas of a town (Bassett on Zoning [1940 ed.], pp. 70-72, 200; 1 Rathkopf on Law of Zoning and Planning [3d ed., 1956], p. 259; Yokely on Zoning Law and Practice [1st ed., 1948], § 183, p. 367). It is well established in this country that a zoning ordinance may not wholly exclude a church or synagogue from any residential district. Such a provision is stricken on the ground that it bears no substantial relation to the public health, safety, morals, peace or general welfare of the community (North Shore Unitarian Soc. v. Village of Plandome, 200 Misc. 524; Ellsworth v. Gercke, 62 Ariz. 198; O'Brien v. City of Chicago, 347 Ill. App. 45; Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, 233 Ind. 83, supra; Bishop of Reno v. Hill, 59 Nev. 231, supra; Young Israel Organisation of Cleveland v. Dworkin, 133 N. E. 2d 174, 179, supra [Ohio]; City of Sherman v. Simms, 143 Tex. 115). An ordinance will also be stricken if it attempts to exclude private or parochial schools from any residential area where public schools are permitted (Long Island Univ. v. Tappan, 305 N. Y. 893, affg. 281 App. Div. 771, which unanimously affd. 202 Misc. 956; Matter of Property Owners Assn. v. Board of Zoning Appeals, 2 Misc 2d 309; see Roman Catholic Welfare Corp. v. City of Piedmont, 45 Cal. 2d 325; City of Miami Beach v. State, 128 Fla. 750; City of Chicago v. Sachs, 1 Ill. 2d 342, supra; Catholic Bishop of Chicago v. Kingery, 371 Ill. 257; Lumpkin v. Township Committee of Bernards, 134 N. J. L. 428; State v. Northwestern Preparatory School, 228 Minn. 363, supra).
Section 2 of the ordinance states that it was enacted “ For the purpose of promoting the public health, safety, morals or the general welfare ”. If the planning board’s refusal to grant a permit to petitioners in the instant case results in the exclusion of this proposed church and school from the Class A residential district of the Town of Brighton and, if such refusal bears no substantial relation to the health, safety, morals or general welfare of the community, such action is illegal (Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, 233 Ind. 83, 91, supra).
Let us examine separately each of the reasons advanced by the planning board to support its decision. In evaluating these *523 reasons, it must be borne in mind that churches and schools occupy a different status from mere commercial enterprises and, when the church enters the picture, different considerations apply (State v. City of Tampa, 48 So. 2d 78 [Fla.]; Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, supra).
1. No church or school in a built-up area: The planning board found that the area in question was almost completely built up, and that churches in the town had all previously been built in areas where future residential development could accommodate itself to a church and school. The board stated that to allow this proposed use in this built-up area, inhabited by people who have chosen to live there because it was strictly residential, would change the character of the residential use and enjoyment of the area.
This in effect is a declaration by the board that a proposed church and school, such as we have here, could only be built in an outlying area. Since the board states that all of this Class A area except this tract is built up, this in effect precludes the Diocese, under this declaration of policy, from ever locating its church in a Class A district. In fact, in their answer, respondents expressly state that under their interpretation of the ordinances, the proposed church and school and accessory uses are limited to a location in a Class C zone. Thus the Diocese is forced to locate in an undeveloped section of the town without being able adequately to serve the territorial needs of its parishioners, in the hope that people of the Catholic faith will move near it. We know of no rule of law which requires that churches may only be established in sparsely settled.areas. On the contrary, as was said in O'Brien v. City of Chicago (347 Ill. App. 45, 51, supra), “ wherever the souls of men are found, there the house of God belongs.”
In State ex rel. Synod of Ohio v. Joseph (139 Ohio St. 229, supra), a kindred situation was presented. In that case, the ordinance involved provided that only private homes could be erected in a Class I district11 ‘ Provided that * * * churches, schools * * * may be erected and used within such district by special permit granted by the zoning commission ’ ” (p. 238, emphasis supplied). The permit was denied on the basis of a declared policy that no church was to be located in a Class I district while Class III (equivalent to Brighton Class C) or business property was available. The court found that *524 the thrust of the ordinance was to allow churches and schools in a Class I district, but that the policy expressed amounted to a suspension of this express provision of the ordinance. The court held that such an exclusion was not in furtherance of the public health, safety, morals or general welfare; that there was no authority in the ordinance for such a policy; and that the denial of the permit to petitioner was therefore arbitrary and unreasonable and in violation of petitioner’s rights. In reference to this policy the court found that the board was trying to create, by administrative act, an exclusive residential section and stated (p. 249): “ It is true that many people prefer not to reside next door to a church. But the way legally to effectuate this desire is by private mutual covenants between property owners imposing appropriate servitudes on the land. * * * .We do not believe it a proper function of government to interfere in the name of the public to exclude churches from residential districts for the purpose of securing to adjacent landowners the benefits of exclusive residential restrictions.” (Accord, Bassett on Zoning [1940 ed.], p. 200.)
The planning board of Brighton has attempted to impose the same type of policy in this case, notwithstanding an ordinance whose thrust also is to allow churches and schools in Class A areas. Such policy may not be upheld for the reasons herein-before stated.
2. Adverse effect upon property values: This ground will apply with equal force to any residential zone and, if such unauthorized standard is allowed to prevail, the planning board could keep churches and private schools from locating in any place in a Class A area. It has been held that this reason is insufficient to deny a permit for the building of a parochial school in a Class I residential area (Archbishop of Oregon v. Baker, 140 Ore. 600). Moreover, in view of the high purposes, and the moral value, of these institutions, mere pecuniary loss to a few persons should not bar their erection and use.
3. Loss of potential tax revenue: Section 1 of article XVI of the Constitution of this State provides that ‘ ‘ real or personal property used exclusively for religious, educational or charitable purposes ” shall always be exempt from taxation, and such institutions have been granted tax exemption (Tax Law, § 4, subd. 6). Thus the paramount authority of this State has declared a policy that churches and schools are more important *525 than local taxes, and that it is in furtherance of the general welfare to exclude such institutions from taxation. This being the case, it cannot be seriously argued that the decision of respondents denying this permit because of a loss of tax revenue is in furtherance of the general welfare. A higher authority than these boards has decreed otherwise, and it has been held that “No municipal corporation can justly refuse a permit to build a church only because the property will no longer be subject to taxation.” (State ex rel. Anshe Chesed Cong. v. Bruggemeier, 97 Ohio App. 67, 75.)
4. Decreased enjoyment of neighboring property. Noise and other inconveniences have been held to be insufficient grounds upon which to deny a permit to a church (State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, supra) or a parochial school (Archbishop of Oregon v. Baker, 140 Ore. 600, supra).
5. Traffic hazards: Although nothing is mentioned in the planning board’s decision about possible traffic hazards, evidence was presented on this question to that board, and much is made of it in respondents’ answer and brief, apparently by way of afterthought. This was the very situation presented in Matter of Small v. Moss (279 N. Y. 288) where the regulation was stricken as an improper delegation of legislative authority. There we held that the commissioner of licenses had no power to deny a license to a theatre on the ground that traffic and parking problems would be created, since no such policy or standard was declared in the statute. Several jurisdictions have held that it is arbitrary and unreasonable to deny a permit to a church or parochial school because of possible traffic hazards that may be created (State v. City of Tampa, 48 So. 2d 78, supra [Fla.]; Board of Zoning Appeals of Decatur v. Jehovah's Witnesses, 233 Ind. 83, supra [Ind.]; Young Israel Organization of Cleveland v. Dworkin, 133 N. E. 2d 174, supra [Ohio]; State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, supra; State ex rel. Anshe Chesed Cong. v. Bruggemeier, 97 Ohio App. 67, supra [Ohio]; Archbishop of Oregon v. Baker, 140 Ore. 600, supra [Ore.]).
As to the right of the planning board to reject the so-called “ [1] package deal ’ ” offered in this ease, it is clear today that the accessory uses proposed by the Diocese, which are allowed by the ordinance, are within the scope of a church’s activities. ‘ ‘ A church is more than merely an edifice affording people the *526 opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice ” (Matter of Community Synagogue v. Bates, supra, p. 453). In a recent case, an Indiana court stated: “ We are of the opinion that a convent or ‘ sisters’ home ’ must be considered an integral part of any Roman Catholic church project, which is composed of four component parts, vis.: church, priests ’ mansion, a ‘ sisters ’ home, ’ and school. ’ ’ (Board of Zoning Appeals v. Wheaton, 118 Ind. App. 38, 47.) An earlier case also included a parting lot and playgrounds as proper accessory uses to a church (Keeling v. Board of Zoning Appeals, 117 Ind. App. 314).
Thus church and school and accessory uses are, in themselves, clearly in furtherance of the public morals and general welfare. The church is the teacher and guardian of morals (State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, supra), and “an educational institution, whose curriculum complies with the state law, is considered an aid to the general welfare ” (Archbishop of Oregon v. Baker, 140 Ore. 600, 613, supra). These proposed structures will not interfere with the public health, nor can they be said to be a danger to the public peace or safety; if they were, the ordinance would not have permitted their location in the district (§ 19, subd. [2]). It could hardly be urged that such structures are more objectionable than those related to agriculture, which are expressly permitted in Class A districts without qualification (§ 19, subd. [5]).
In the light of the foregoing cases, and under the facts presented by this record, the decisions of the planning board, the board of appeals and the town board of Brighton bear no substantial relation to the promotion of the public health, safety, morals or general welfare of the community; they must therefore be deemed arbitrary and unreasonable and should be annulled. That is not to say that appropriate restrictions may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas. In this case, however, and in reference to this property, the decisions of the town bodies are arbitrary and unreasonable.
Accordingly, the orders below should be reversed, the decisions of the town bodies annulled and the matter remitted to them, for further proceedings, not inconsistent with this opinion. Inasmuch as the board of appeals has not passed upon the *527 merits of the application for a variance, we do not pass upon this phase of the appeal.
We are advised that Joseph F. Taylor, executor under the will of William A. E. Drescher, deceased, and one of petitioners-appellants herein, died on June 13, 1956. Our decision will, therefore, he entered nunc pro tunc as of the date we last recessed, June 8, 1956.

. Town Law (§ 267, subd. 7) provides that any person aggrieved by the decision of any board of appeals or other board of the town may apply to the Supreme Court for relief by a proceeding under article 78 of the Civil Practice Act, and that such proceedings shall be governed by article 78 “except that (a) it must be instituted as therein provided within thirty days after the filing of a decision in the office of the town clerk” (emphasis supplied). Petitioners were fearful that if they failed to seek review by the town board they would be denied relief for failure to exhaust their administrative remedies. On the other hand, if the town board took more than 30 days to decide, as they actually did, petitioners would be precluded from reviewing the decisions of the planning board and board of appeals. They therefore pursued both remedies.