Rose Margolin, Plaintiff-Appellee, *v.* Public Mutual Fire Insurance Company, Defendant-Appellant.

(No. 54945;

First District—March 22, 1972.

Clausen, Hirsh, Miller & Gorman, of Chicago, (John W. Morrison and James T. Ferrini, of counsel,) for appellant.

Rabens, Formusa & Glassman, of Chicago, (George C. Rabens, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This action was brought to recover damages under a policy of fire insurance issued by defendant, Public Mutual Fire Insurance Company, and covering plaintiff's premises at 6263-65 South Harper Avenue, Chicago. Plaintiff and defendant each presented a motion for summary judgment based on the facts established by several depositions and affidavits. Defendant's motion was denied, and plaintiff's was allowed. Judgment for plaintiff in the sum of $10,200 was entered. Defendant appeals from the order denying its motion, allowing plaintiff's motion and entering judgment for plaintiff.

On December 9, 1966, plaintiff's insurance agent ordered fire insurance coverage from defendant for an apartment building at 6163-65 South Harper Avenue, Chicago. The order submitted by the agent listed plaintiff's address as 6263-65 South Harper Avenue. On December 20, 1966, the requested coverage was issued. The face of the policy reflected the address of the insured building, but did not reflect the mailing address of plaintiff, which was determined at trial to be 7337 South Shore Drive, Chicago. As the contents of the policy, the parties adopted the standard fire insurance form authorized by Rule 23.01 of the Illinois Insurance Department. In pertinent part, the cancellation provision in the standard form policy reads as follows:

"Cancellation of policy. * * * This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation * * *."

There was an endorsement to the policy which substituted for the above cancellation provision the following:

"Endorsement (Change of Cancellation Conditions) THIS FORM SUPERSEDES ANY OTHER FORM OR LIBERALIZATION

By the acceptance of this policy by the named insured to which this endorsement is attached and of which this endorsement forms a part, it is understood and agreed between the insured and all named parties on the policy and the Company that the Cancellation Procedure on Lines 60 to 65 and 68 to 70 now reads as follows:
\* \* \* THE SENTENCE STARTING ON LINE 60 AND ENDING ON LINE 65 SHALL READ: . ·
This policy may be cancelled at any time by this Company by the mailing to the named insured at the address shown in this policy five days' written notice of cancellation \* \* \*."

The policy, as altered, was accepted for filing by the Director of Insurance. On June 23, 1967, defendant placed a notice of cancellation in the mail which was addressed to plaintiff at the South Harper Avenue address. The notice stated that the cancellation was effective as of 12:00 P.M. on June 28, 1967. On July 2, 1967, the insured building was damaged by fire. On July 12th the unopened envelope containing the notice of cancellation was returned to defendant, bearing the stamp, "Unclaimed by Addressee." After defendant's refusal to pay plaintiff's damage claim for $10,000, this action was brought to enforce coverage.

The basic issue raised by the parties is whether the endorsement to plaintiff's fire insurance policy, which provided for effective cancellation by the mere act of "mailing" notice, was valid and enforceable, thereby superseding the mode of cancellation prescribed in the standard form. Because a resolution of this issue hinges upon the scope of authority vested in the Illinois Director of Insurance, we deem it appropriate to briefly review the background of and the enabling legislation pertaining to that office.

In 1893 the power of regulation over insurance in Illinois was transferred from the Auditor and the Attorney General to an independent insurance department headed by an "Insurance Superintendent."[1] From 1917 to 1933 the Superintendent of Insurance operated under the control and direction of the Illinois Director of Trade and Commerce. In 1933 legislation re-established the independence of the Department of Insurance,[2] and, by amendment to the Civil Administrative Code, the office of Director of Insurance was created to head that department.[3] Section 401 of the Insurance Code of 1937 [4] was the first statutory provision to

---

[1] Ill. Rev. Stat. (Hurd) 1893, ch. 73, par. 1.

[2] Ill. Rev. Stat. 1937, ch. 127, par. 3.

[3] Ill. Rev. Stat. 1935, ch. 24a, par. 4.

[4] Ill. Rev. Stat. 1937, ch. 73, par. 1013.

deal generally with the powers and duties of the Director of Insurance. It provided:

"General Powers of the Director.) The Director is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State. He shall have the power

(a) to make reasonable rules and regulations as may be necessary for making effective such laws;

(b) to conduct such investigations as may be necessary to determine whether any person has violated any provision of such insurance laws; and

(c) to conduct such examination, investigations and hearings in addition to those specifically provided for, as may be necessary and proper for the efficient administration of the insurance laws of this State."

Prior to 1945 Section 397 of the Insurance Code [5] required that fire insurance policies in Illinois be drafted according to the standard form fire insurance policy adopted by the National Convention of Insurance Commissioners. After amendment in 1945, Section 397 delegated to the Director of Insurance [6] the power to determine a standard form. In 1966-67, that section read as follows: [7]

"Standard fire policy.) The Director of Insurance shall promulgate such rules and regulations as may be necessary to effect uniformity in all basic policies of fire and lightning insurance issued in this State, to the end that there by concurrency of contract where two or more companies insure the same risk."

Additional enabling legislation relative to fire insurance policies is embodied in Section 143(2) of the Insurance Code: [8]

"Casualty, Fire and Marine. The Director shall require the filing of all policy forms issued by any company transacting the kind or kinds of business enumerated in Classes 2 and 3 of section 4. He may require, in addition thereto, the filing of any generally used riders, endorsements, application blanks and other matter incorporated by reference in any such policy or contract of insurance. Companies that are members of an organization, bureau or association may have the same filed for them by organization, bureau or association. If the Director shall find them an examination of any such policy form, rider, endorsement,

---

[5] Ill. Rev. Stat. 1937, ch. 73, par. 1009.

[6] Ill. Rev. Stat. 1945, ch. 73, par. 1009.

[7] Ill. Rev. Stat. 1967, ch. 73, par. 1009.

[8] Ill. Rev. Stat. 1967, ch. 73, par. 755(2).

application blank or other matter incorporated by reference in any such policy so filed that it violates any provision of this Code, contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy, he shall order the company or companies issuing such forms to discontinue the use of the same. Nothing herein contained shall require a company transacting the kind or kinds of business enumerated in Classes 2 and 3 of section 4 to obtain approval of such forms before the same are issued nor in any way affect the legality of any policy that has been issued and found to be in conflict with this subsection, but such policies shall be subject to the provisions of section 442."

In 1946, pursuant to the powers vested by Section 397, the Director of Insurance promulgated Rule 23.01. Section (1) of that rule reads as follows:

"(1) The printed form of policy attached hereto is hereby designated as the Standard Policy for fire and lightning insurance of the State of Illinois. No policy or contract of such insurance shall be made, issued or delivered by any insurer subject to the provisions of the Illinois Insurance Code or by any agent or representative thereof on any property in this State unless it shall conform to such form of Standard Policy, and to the other provisions of this order."

The attached standard form policy contains two provisions pertinent to the issues presented in the case at bar; the cancellation notice provision (*supra*, Page 1) and the following provision:

"Added provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change."

Plaintiff contends that the endorsement attached to the policy issued by Public Mutual was inconsistent with the cancellation notice provision mandated by the standard form policy in Rule 23.01. She asserts that the issuance of that endorsement, regardless of the actions of the Director of Insurance, constituted a violation of Rule 23.01 and thereby rendered applicable Section 442 of the Insurance Code,[9] which reads as follows:

"(Validation of Illegally Issued Policies.) Any contract or policy of in-

---

[9] Ill. Rev. Stat. 1967, ch. 73, par. 1054.

surance or any application, endorsement or rider form used in connection therewith issued in violation of any section of this Code requiring certain provisions to be inserted therein or the inclusion of provisions prohibited, or issued without submitting same for approval by the Director in accordance with section 143,[1] shall nevertheless be held valid but shall be construed in accordance with the requirements of the section that the said policy, application, endorsement or rider violates, and when any provision in such contract, application, endorsement or rider is in conflict with any provision of this Code, the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto."

Consequently, argues plaintiff, the endorsement's requirement that cancellation notice merely be "mailed" did not supersede the standard form requirement that notice be "given," and defendant's failure to "give" notice defeated its attempted cancellation. Defendant counters that the acceptance for filing of the endorsement by the Director of Insurance validated the endorsement's mode of notice, which was then fully complied with by the act of mailing. Defendant further contends that the discretionary act of the Director in "approving" the endorsement is not reviewable by our courts.

*OPINION*

■■ We believe it manifest that the subject endorsement was inconsistent with the authorized standard form provision governing cancellation notices, and that its acceptance by the insured constituted a "waiver" of that standard form provision. Thus, the terms of the endorsement conflicted with the provisions entitled, "Cancellation of policy" and "Added provisions" in the standard form incorporated in Rule 23.01. We also interpret the word "Code" in Section 442 of the Insurance Code to encompass rules and regulations promulgated pursuant to authority delegated by specific provisions of the Insurance Code. The rules and regulations of administrative agencies have the force of statute. (*Williams v. New York Cent. R.R.*, 402 Ill. 494, 501, 84 N.E.2d 399; *Woods v. New York Cent. & St. Louis R.R.*, 339 Ill.App. 132, 138, 88 N.E.2d 740.) It follows that the issuance of this endorsement rendered applicable the protections afforded by Section 442, unless it can be said that the conflict with Rule 23.01 was obviated by the action of the Director of Insurance in accepting the endorsement for filing.

■■ The specific issue presented is whether the tacit approval of an endorsement by the Illinois Director of Insurance makes that en-

dorsement legal and binding despite its conflict with the standard form incorporated in Rule 23.01 of the Department of Insurance. There exists a substantial body of precedent from other jurisdictions to the effect that state directors of insurance are powerless to allow deviations from standard forms of insurance policies incorporated in statutes. (*Shank v. Fidelity Mut. Life Ins. Co.*, 221 Minn. 124, 21 N.W.2d 235; *Vermes Credit Jewelry Inc. v. Fireman's Fund Ins. Co.*, 92 F.Supp. 905 (U.S.D.C. Minn.); aff'd 185 F.2d 142 (8th Cir. 1950) 43 Am.Jur.2d Insurance, § 58 (1969); Annot. 119 A.L.R. 877 (1939).) There is no comparable Illinois precedent. However, Section 143 and Section 442 of the Illinois Insurance Code, read in conjunction, establish that the filing by the Director of Insurance of any insurance policy or endorsement which conflicts with any Code provision guaranteeing certain coverage to insureds shall not serve to deny the insureds the benefit of that guaranteed coverage. (See *Hartford Accident and Indemnity Co. v. Holada*, 127 Ill.App.2d 472, 262 N.E.2d 359.) We presume, therefore, that prior to 1945, while the standard form fire insurance contract was embodied in Section 397 of the Insurance Code, the Director of Insurance was without power to validate policy provisions inconsistent with that form. Since 1946 the standard form has been embodied not in a statute, but in Rule 23.01 of the Insurance Department. Recognition of this fact, however, does not require the conclusion that the Illinois Director was empowered after 1946 to validate deviations from the standard form. Once the Director of Insurance established a standard form and, by Rule 23.01, required general adherence to that form, the Director became equally obliged to observe that proscription. Having once established rules and regulations pursuant to statutory authority, an administrative agency is bound by those rules and regulations and may not violate them. *People ex rel. King v. Gregory*, 335 Ill.App. 570, 82 N.E.2d 369; *Ptacek v. People ex rel. Deneen*, 194 Ill. 125, 62 N.E. 530.

■■ In urging a broader construction for the Director of Insurance powers, defendant erroneously equates the Director's acknowledged power to amend the standard form with an alleged power to grant exceptions and variations. Yet the power to grant exceptions does not inhere in the conferred power to amend. In Section 397 of the Code, the Illinois legislature delegated to the Director of Insurance the power to promulgate rules and regulations necessary to effect uniformity in fire insurance policies. The expressed purpose underlying this delegation was the promotion of uniform coverage. That purpose would be undermined if we were to hold that the standard form policy could be established by a process of individual exception rather than by rules and regulations of

general applicability. An administrative agency may not accomplish by exception what it is empowered to accomplish only by rule or regulation. *County Commissioners of Anne Arundel County v. Ward,* 186 Md. 330, 46 A.2d 684.

Defendant has cited several Illinois cases, but none are controlling in the case at bar. *People ex rel. Barber v. Hargreaves,* 303 Ill.App. 387, 25 N.E.2d 416, held that Section 201 of the Insurance Code precluded the usurpation by private litigants of certain enforcement powers vested in the Director of Insurance by that section. *Linkens v. Furman,* 52 Ill.App.2d 1, 201 N.E.2d 645, held that a policy endorsement issued in disregard of the Director of Insurance' disapproval was not binding upon the insured. *Bernardini v. Home & Automobile Ins. Co.,* 64 Ill.App.2d 465, 212 N.E.2d 499, merely contained *dicta* to the effect that the failure of the Director of Insurance to disapprove a submitted policy provision implied his determination that such provision did not violate the Insurance Code. We find in these cases no authority for the proposition that the Director of Insurance has been delegated unreviewable power to validate insurance policy provisions which conflict with a rule promulgated by his own office.

■■ The action of the Director of Insurance in filing the subject endorsement did not constitute an amendment of the standard form fire insurance policy. We conclude that his approval of the endorsement, which conflicted with provisions of the standard form policy, rendered applicable Section 442 of the Insurance Code, which we interpret to govern endorsements issued contrary to Rule 23.01 of the Illinois Insurance Department. Therefore, we hold that, by virtue of Section 442, plaintiff was entitled to the benefit of the standard form provision which required that notice of cancellation be "given."

■■ Defendant also contends that plaintiff's acceptance of the unearned portion of the premium after the date of the fire constituted a waiver of plaintiff's right to proper notice of cancellation. That precise argument was rejected in *Crawford v. Aachen & Munich Fire Ins. Co.,* 100 Ill.App. 454; aff'd., 199 Ill. 367, 65 N.E. 134:

> "It is, however, contended that because the hotel company paid to Crawford the unearned premium of $17.75, which was paid to it by the hotel company, he thereby ratified the cancellation. We think not. At the time Crawford received this unearned premium his rights under the policy had long before accrued, because of the loss, and such payment to him, without express agreement to that effect, would not be a waiver of his claim against appellee for the loss."

We reaffirm *Crawford* and hold that plaintiff's conduct did not prejudice her rights under the contract. For the same reason, we reject defendant's

argument that certain representations made by plaintiff to her other insurers estopped her from enforcing the contract. We affirm the judgment.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.