DU-MONT VENTILATING CO., Plaintiff-Appellant, *v.* THE DEPARTMENT
OF REVENUE, Defendant-Appellee.

Third District   No. 76-475

Opinion filed September 8, 1977.

McDermott, Will & Emery, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Stephen R. Swofford, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal involves the review of an administrative decision by the defendant, Illinois Department of Revenue, that the plaintiff, Du-Mont Ventilating Company, must pay retailers' occupational taxes and use tax on the cost of its materials used in the construction of the intake side of a push-pull air system installed in the Caterpillar Tractor Company's Mapleton foundry. While finding that the pollution control facilities of the Mapleton foundry will "not properly operate or fulfill their purpose * * * without the in-take ventilating system," the defendant issued a final assessment for Retailers' Occupation Tax, Use Tax, Municipal Retailers' Occupation Tax, penalties and interest in the amount of $27,457.90.

According to the "Hearing Disposition" of the defendant, there were two findings of fact upon which the issuance of a final assessment was based. First, the defendant could not find from the evidence that the intake part of the system was made a physical component part of the pollution control facilities. Secondly, there was no evidence that the plaintiff had applied for and received a permit from the Illinois Environmental Protection Agency. The "Hearing Disposition" indicated that, although the second finding was not a compelling reason for the determination, it had a bearing on the issue.

The plaintiff appealed to the Circuit Court of Peoria County. On appeal, the defendant additionally argued that the system involved in this case was not a pollution control facility within the taxing act because it eliminated pollutants from the work area, rather than the outdoor atmosphere. The circuit court, without opinion, affirmed the final determination of the defendant and entered a judgment against the plaintiff for $27,457.90 plus interest and costs. From the judgment of the Circuit Court of Peoria County, the plaintiff appealed to this court. We reverse.

The overwhelming evidence produced at the hearing conducted by the defendant was that, without the intake, or "push," part of the system, the

exhaust side, which included a dust collecting system, would not properly function. In addition, the intake side was installed after the exhaust side because the exhaust alone was not clearing the very dense dust from the work area. When installed, the intake side was considered to be part of the overall system. It had no other function. It assists the exhaust function because air can be pushed at a rate 10 times faster than it can be pulled with the same horsepower. However, the defendant's auditor testified that, although, in his opinion, the exhaust side is a pollution control device, the intake parts of the system are not because they are not physically components of the exhaust side.

■■■ The purchase, employment and transfer of pollution control facilities is not a purchase, use or sale of tangible personal property under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440a) and under the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.2a). Therefore, the only issue in this appeal is whether the system involved herein is an air pollution control facility for the purposes of these exemptions. Under the applicable taxing statutes,

> " 'Pollution control facilities' means any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the 'Environmental Protection Act', * * * or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property." Ill. Rev. Stat. 1975, ch. 120, pars. 439.2a, 440a.

The Environmental Protection Act defines air pollution as:

> "[T]he presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to the property, or to unreasonably interfere with the enjoyment of life or property." (Ill. Rev. Stat. 1975, ch. 111½, par. 1003(b).)

The prior act, however, defined air pollution as:

> "[P]resence in the *out-door* atmosphere of one or more air contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant or animal life or to property, or which unreasonably interfere with the enjoyment of life and property." (Emphasis added.) (Air Pollution Control Act, Ill. Rev. Stat. 1963, ch. 111½, par. 240.2(c).)

The plaintiff argues that the elimination of the word "out-door" from the definition of atmosphere evidences a legislative intent to encompass

indoor, as well as outdoor atmospheric pollution within the scope of the pollution control legislation. We agree.

■■ The defendant counters with a three-pronged attack on the definition of atmosphere. First, the defendant argues that the Environmental Protection Agency (E.P.A.) governs outdoor atmospheric pollution while the Industrial Commission is the sole governing authority over standards relating to indoor air quality standards. Although the E.P.A. is not necessarily concerned with the working conditions of the employees, there can be no challenge to the fact that, in most manufacturing situations, the pollution which the E.P.A. was created to control originated indoors and was, in some way, expelled out of doors. For this reason, we believe the E.P.A. has some control over air pollution even though it originates indoors.

The defendant contends, secondly, that the definition of "ambient air," as the Illinois Pollution Control Board (P.C.B.) interprets the Federal Clean Air Act (42 U.S.C. §1857 *et seq.*(1970)), and, thirdly, that the ordinary meaning of the word "atmosphere" requires reading of the word "atmosphere" in the Environmental Protection Act not to include air inside buildings. The P.C.B. has concluded that ambient air means outside air, citing the Federal definition:

> "Ambient air means that portion of the atmosphere, external to buildings, to which the general public has access." (40 C.F.R. §50.1(e).)

If that portion of the atmosphere external to buildings is called "ambient air," there is, by implication, a portion of the atmosphere which is internal to buildings, though, as yet, unnamed. Furthermore, the dictionary definition of atmosphere supports the conclusion that indoor air is a part of the atmosphere. Atmosphere means:

> "a: a gaseous mass enveloping a heavenly body * * * b: the whole mass of air surrounding the earth c: a gaseous envelope or medium * * *." (Webster's Third New International Dictionary 138 (1971).)

Only one gaseous mass surrounds the earth. There are not two separate masses of gas depending upon whether you are indoors or outdoors. The gases, of which the atmosphere consists, are flowing and pass from indoors to out of doors, whether through windows, doors, cracks in walls or other, more sophisticated, ventilating systems. As a result, indoor pollution necessarily, pollutes the atmosphere.

■■ Next, the defendant argues that the system was installed to improve working conditions and, therefore, that it has a substantial function in the manufacturing or processing of a product. Recently, an Illinois appellate court has held that only those devices which have no

substantial function in the manufacturing or processing of a product can be considered air pollution control devices. (*Illinois Cereal Mills, Inc. v. Department of Revenue* (4th Dist. 1976), 37 Ill. App. 3d 379, 346 N.E.2d 69.) However, that case involved replacing coal-fired boilers with gas-fired boilers to provide steam for drying grain and heating the plant. On the other hand, the system involved in the case at bar does nothing but clear the air. This equipment has no substantial function in the manufacturing or processing of a product even though it provides better working conditions in addition to performing a pollution control function.

■■ It is also a contention of the defendant that this court should follow the rules of the administrative agency enforcing the statute in order to determine whether the intake portion of this system is a pollution control facility within the exemptions from the taxes. When promulgated pursuant to legislative authority, the rules and regulations of administrative agencies have the force and effect of statutes (*Margolin v. Public Mutual Fire Insurance Co.* (1st Dist. 1972), 4 Ill. App. 3d 661, 281 N.E.2d 728), and like statutes, they enjoy a presumption of validity. (*Armstrong Chemcon, Inc. v. Pollution Control Board* (1st Dist. 1974), 18 Ill. App. 3d 753, 310 N.E.2d 648.) While no administrative rule may contravene the express provisions of a statute (*People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322, 90 N.E.2d 729), in cases of doubt, the long continued, uniform construction of a statute by executive officers must be accorded great weight by the judiciary in interpreting the statute, unless a contrary interpretation is clearly required. *O'Brien v. City of Chicago* (1st Dist. 1952), 347 Ill. App. 45, 105 N.E.2d 917.

■■ The rule which the defendant wants us to apply is rule 6 of article II of the Retailers' Occupation Tax Act (promulgated by the Department of Revenue in 1969 pursuant to section 12 of the Service Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 451)) which provides:

> "This exemption includes not only the pollution control equipment itself, but also replacement parts therefor, but does not extend to chemicals used in any such equipment, to fuel used in operating any such equipment nor to any other tangible personal property which may be used in some way in connection with such equipment, but which is not made a physical component part of the equipment itself."

Even though this rule states that the equipment must be a physical component part of the pollution control facility to invoke the exemption, it does not say that where the pollution control facility consists of two machines they must be physically attached or one is not subject to the exemption. The intake part of this system is not merely used "in some way

in connection with" the exhaust part of the system. They are both component parts of the system such that one does not function properly without the other.

As a result, we believe the plaintiff fulfilled its burden of proving that this system fits the exemption. Therefore, the ruling of the Department of Revenue was against the manifest weight, and the judgment of the Circuit Court of Peoria County is reversed.

Reversed.

STENGEL, P. J., concurs.

Mr. JUSTICE SCOTT, dissenting:

I am compelled to dissent from the views expressed by my colleagues in their majority opinion in this case.

If my colleagues are correct, then in my opinion they have opened the door to the administrators of the Environmental Protection Act so that they will be able to regulate working conditions of employees within factories. I do not agree that the elimination of the term "out-door" from the definition of atmosphere evidences a legislative intent to encompass indoor, as well as outdoor, atmospheric pollution within the scope of pollution control legislation. The word "out-door" could well have been eliminated because the words "out-door atmosphere" were redundant in that atmosphere subject to air pollution which is to be regulated by the Environmental Protection Act has historically and consistently referred to outside air. There is a plethora of Federal and State laws which concern themselves with the working conditions of industrial employees, *i.e.*, Clean Air Act of 1963 (42 U.S.C. §1857 *et seq.*), Health and Safety Act of 1936 (Ill. Rev. Stat. 1937, ch. 48, par. 137.1 *et seq.*), Occupational Safety and Health Act of 1970 (29 U.S.C. §651 *et seq.* (1970)). These particular acts and many more concerning the working conditions of industrial employees predated the Environmental Protection Act and indicate that this latter act was not enacted for the purpose of regulating the internal working conditions of industry.

I believe that the pivotal question in this appeal is, what was the primary purpose of the facilities, devices and/or equipment installed in Caterpillar's Mapleton plant. The plaintiff repeatedly refers to its installation as a pollution control facility, however, with the exception of the dust collector which prevented a pollution of the air outside the factory, the installation of the plaintiff was a ventilating system.

At Caterpillar's Mapleton plant, in various areas referred to as pits, working conditions had become intolerable as the result of the diffusion

of sand, dust, fumes and minute particles of slag. Respiratory equipment was required and the air was so dense that visibility was limited to a distance of 10 feet. Mr. William J. Williams, Vice President of the plaintiff company, testified that when he visited pit four the dust collection was so bad "I don't know how our men worked down there in putting in the systems." Mr. Don Nell, an employee of Caterpillar Tractor Company's Mapleton plant who was in charge of all air moving devices, when asked about the installation of the plaintiff answered as follows:

"Yes, sir. My plant wouldn't operate. To make it very brief with you, the required ventilation in pit two and four was generated around an OSHA requirement for people that have to work in that area. Without it, I don't have people working there and without them working in there, I don't have a process."

When asked what the term "OSHA" meant, Mr. Nell explained that it meant the Occupational Safety and Health Act, a Federal act.

I dissent because it is clear to me from examining the record that the primary purpose of the equipment installed by the plaintiff was to enhance production by Caterpillar Tractor Company. Its installation was also a response to Federal and State safety and health requirements. Such being the primary purpose the decision of the circuit court of Peoria County should have been affirmed. See *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, 346 N.E.2d 69.