## George R. Kershaw, Trading as George R. Kershaw & Company, Appellee, v. Booth Fisheries Company, Trading as Booth Cold Storage Company, Appellant.

## Gen. No. 17,903.

1.  WAREHOUSEMAN—*surrender of warehouse receipt before action necessary.* Where a negotiable warehouse receipt has been issued with the consent of the owner of the goods to a third party, surrender of the receipt, or enjoining its negotiation, or causing it to be impounded by the court, is necessary before an action can be maintained against the warehouseman for conversion.

2.  REPLEVIN—*where warehouse receipt not surrendered, replevin does not lie.* Under sections 25 and 54 of the act respecting warehouse receipts, a warehouse company must be given the benefit of all provisions of the act which are made for its protection, and these provisions should be construed as liberally as is consistent with a fair interpretation of the language employed, and where the receipt is held by a third party and not surrendered when no decree has been obtained enjoining such party from transferring the receipt, or the warehouse company been otherwise secured against its negotiation, action of trover or replevin will not lie.

Appeal from the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed. Opinion filed January 28, 1913. Rehearing denied February 11, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; M. H. WHITNEY, WALTER H. JACOBS and J. SIDNEY CONDIT, of counsel.

H. C. LUST and FELSENTHAL & BECKWITH, for appellee; H. C. LUST, of counsel.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

In this case judgment was obtained by the plaintiff (appellee) against the defendant (appellant), on a finding that plaintiff have and retain possession of

320 boxes of Spitzenburg apples, and in addition thereto recover from the defendant damages in the sum of $800, with costs. The damages, it would appear, include the value of 310 boxes of apples alleged to have been wrongfully converted by the defendant. In a recitation of the facts the dates are important, and will therefore be given with some particularity.

On October 10, 1910, the Northwestern Fruit Exchange of Portland, Oregon, shipped to itself at Chicago from Byron, Washington, a carload of apples via. Northern Pacific and Chicago & Northwestern railways, the bill of lading containing the words, "Notify George R. Kershaw & Company, care of Booth Cold Storage Company." The car arrived in Chicago, as shown by the testimony offered by the plaintiff, on November 1, 1910, Kershaw & Company were notified by a representative of the railway company of the arrival on November 1st, and again on November 3rd and 4th. On the afternoon of the 4th the railway company was directed to "have car put to Booths' Cold Storage," and from the evidence it would appear that on November 7th the car was unloaded into the warehouse and a negotiable warehouse receipt issued to one Sylvan Newhall.

It is insisted by plaintiff that there is no evidence in the record that such a negotiable warehouse receipt was issued by the defendant. The plaintiff, Kershaw, when on the stand was asked if he knew whether Newhall had a negotiable warehouse receipt covering the property, and answered in the affirmative. The plaintiff seems to have been a law student for ten years, and acted to some extent as his own attorney in the trial court. One Williams, a witness for the defendant and an employe of Newhall, was cross-examined by Kershaw himself and was asked the following question: "And during a conversation you were present, and Mr. Newhall was present, and I was present, and I asked Mr. Newhall for the negotiable receipt, did I not?" Answer: "Yes, sir." Other questions of

a similar nature were asked by the plaintiff himself, in all of which it was assumed that a negotiable receipt had been issued. In our opinion it is quite clear from the record that the trial was had upon the assumption by both parties and the court that a negotiable warehouse receipt had been issued to Newhall.

It appears that a surrender of the bill of lading was not required by the railway company.

Witnesses for the defendant testified in substance that an arrangement was made by the plaintiff with Sylvan Newhall, a commission man, that the apples should be stored in the defendant's warehouse, in space for which Newhall had already contracted; that Newhall should pay the freight and was to make plaintiff an advance on the apples, insure them, and take out a negotiable warehouse receipt in his (Newhall's) name. The witnesses referred to were Newhall himself, and two of his employees. Their testimony was denied by Kershaw, as was also the statement of one of the witnesses, Williams, that Kershaw had gone with Williams to the warehouse after the car had been unloaded, and the testimony of Newhall that under the arrangement Newhall was to sell for Kershaw the car of apples in controversy. On cross-examination the plaintiff admitted that he had had previous dealings with Newhall; that the latter had sold for him one car of apples, and three weeks before had permitted him to store in his space in defendant's warehouse two carloads of apples, for which warehouse receipts were issued to Newhall.

We think it was shown by the preponderance of the evidence that Newhall at Kershaw's request paid the freight and caused the apples to be stored and the negotiable warehouse receipt to be issued in the former's name.

On November 29th the plaintiff notified the defendant that he claimed the ownership of the apples, and a formal letter was written by plaintiff to the defend-

ant on November 30th to the same effect. The letter also made demand for the property. Defendant delivered 100 boxes of the apples to Newhall on November 28th, and 210 boxes on different dates in January following. The refusal by the defendant to deliver to plaintiff was stated to be that it had issued a negotiable warehouse receipt and, therefore, under the law, could not deliver without a surrender of such receipt. On December 3rd, three days after making demand upon the defendant, plaintiff commenced suit against the defendant company, Newhall and the Chicago & Northwestern Railway Company in trover, for the alleged conversion of the property involved in this suit. That suit was pending at the time the present action was brought, but its pendency was not pleaded in bar.

The question to be determined in this case is whether the plaintiff, not having surrendered the negotiable warehouse receipt to the defendant, enjoined its negotiation, or caused it to be impounded by the court, may maintain the proceeding.

Section 25 of the act respecting warehouse receipts, in force July 1, 1907, reads as follows:

"If the goods are delivered to a warehouseman by the owner or by a person whose act in conveying the title to them to a purchaser in good faith for value would bind the owner, and a negotiable receipt is issued for them, they cannot thereafter, while in the possession of the warehouseman be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined. The warehouseman shall in no case be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the court."

We think this suit may not properly be maintained. The act by other provisions imposes very strict obligations upon the warehouseman and severe penalties for their violation. By section 54 of the act it is made

a crime for any warehouseman, or any officer, agent or servant of a warehouseman, to deliver goods out of the possession of the warehouseman, knowing that a negotiable receipt, the negotiation of which would transfer the right to the possession of such goods, is outstanding and uncanceled, without obtaining possession of the receipt, unless the receipt is proven to a court to be lost, under section 14 of the statute, or the warehouseman sold the goods to satisfy his lien or because of their perishable nature, under section 36 of the statute.

Counsel have been unable to find any authority directly bearing upon the situation confronting us in this proceeding. We are not aided by many authorities to which we have been cited, which were rendered prior to the enactment of the statute, and which necessarily do not take into consideration the negotiability of a receipt which is provided for and defined in the present act. The purpose of the act was evidently to render the title to and right of possession of property stored in warehouses more easily convertible, and in order to do so it became necessary to place upon the warehouseman much greater responsibility. A warehouseman, having assumed the responsibilities imposed upon him by the act, must be given the benefit of all provisions of the act which are made for his protection, and these provisions should be construed as liberally as is consistent with a fair interpretation of the language employed. In our opinion the plaintiff, having rendered it possible for Newhall to obtain from the warehouseman a negotiable receipt, should not, under section 25 of the act, be allowed to recover the goods taken in replevin and in trover the value of the goods not taken without having previously obtained a decree enjoining Newhall from transferring the receipt. By his own admission, the plaintiff had had other transactions with the defendant, and had arranged for the storing by Newhall of other cars of fruit in defendant's warehouse, and had consented to, if he

did not arrange for, the issuance of negotiable receipts to Newhall for such fruit. In our opinion, also, although by certain provisions of the act a warehouseman is enabled to protect himself as against different claimants for goods in storage, by a bill in the nature of a bill of interpleader, etc., he is still entitled to the protection provided by section 25 of the act.

Appellee in argument insists that the last sentence of the section, wherein it is provided that the "warehouseman shall in no case be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the court," does not apply in the case of a suit in replevin, for the reason that the prior sentence of the section, wherein it is provided that goods for which a negotiable receipt has been given, may not, while in the possession of a warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, does not mention the action of replevin. We think this is too narrow a construction to be given to the language. The plaintiff, in our opinion, by some proper process either should have obtained from Newhall the negotiable receipt or insured to the defendant that it had not been or would not be negotiated by Newhall. This might have been done by a proceeding in equity enjoining its negotiation. The action in trover heretofore referred to brought by plaintiff against Newhall and others prior to the beginning of the present suit could not have had this effect.

The judgment will be reversed.

*Reversed.*