# WARNER v. TYNG WAREHOUSE CO.
## (ALLEN, Intervener).

No. 4367.   Decided March 8, 1928.   (265 P. 748)

*Halverson & Price,* of Los Angeles, Cal., for appellant.

*Hutchinson & Hutchinson,* of Salt Lake City, for respondent.

*Willard Hanson,* of Salt Lake City, for defendant.

GIDEON, J.

Respondent brings this action as receiver of the Western Food Products Company, a corporation. He was appointed as such receiver on December 13, 1923, in an action then pending in the district court of Salt Lake county, entitled *Jacob Door* v. *Western Food Products Company.* The Tyng Warehouse Company was the sole defendant named in the complaint. It is averred in the complaint that the warehouse company had in its possession 1222 cases of canned apples, and that the plaintiff, as receiver, is the lawful owner of such goods and entitled to the immediate possession of the same, and that demand had been made for their possession and such possession had been refused. It is also alleged that at the time of the appointment of the receiver the Western Food Products Company was the owner of and entitled to said described property. The plaintiff asked judgment for possession of the canned apples, or, if that could not be had, for their value. The intervener and appellant Olive B. Allen was permitted to intervene in the action. She thereupon filed an answer and complaint in intervention. This answer and complaint challenges the jurisdiction of the court respecting the order appointing plaintiff receiver and hence denies that he is such receiver. As an

additional and further defense, the intervener avers that she, on the 6th day of January, 1923, loaned to the Western Food Products Company the sum of $3,400, and that said company caused to be executed and delivered to her its promissory note in writing for the sum of $3,400, payable 5 months after date, with interest at the rate of 9 per cent per annum. It is also alleged that on the 30th day of October, 1923, the Western Food Products Company was the owner of the canned apples in controversy and on said day caused the same to be stored with the Tyng Warehouse Company at Salt Lake City, Utah, and that upon the request of the said products company the warehouse company issued its negotiable warehouse receipt for the goods so stored. It is also stated in the complaint in intervention that on the 7th day of November, 1923, the intervener was the holder of the promissory note for $3,400, and that the same was past due and unpaid; that the products company thereupon delivered to the intervener the said warehouse receipt and the goods represented thereby as security for the payment of the promissory note and the indebtedness evidenced thereby. It is admitted in the complaint in intervention that the sum of $1,945.38 had been paid on the principal of the note and also certain amounts of interest. The warehouse receipt was issued in the name of Olive B. Allen Company, and it is averred in the complaint in intervention that the intervener is the person referred to in said warehouse receipt. The prayer of the complaint in intervention is that plaintiff's action be dismissed; that the intervener recover her costs; and that she be given such other and further relief as will be agreeable to equity. A reply was filed by the plaintiff putting in issue the material allegations of the complaint in intervention.

Trial was had before the court sitting without a jury. Findings of fact and conclusions of law were made and judgment entered in favor of the plaintiff and against the intervener. The intervener appeals.

It was stipulated by the parties that the apples stored in the Tyng warehouse might be sold at private sale by the receiver; that the warehouse company should be paid its bill for storage; that sufficient of the amount received for the apples to satisfy the intervener's claim should be paid to the clerk of the court to await the decision in the cause; and that the warehouse company be dismissed from the action. The court made its order accordingly. The receiver sold the goods and the amount received was disbursed as per the stipulation and the order of the court. Thereafter the controversy was between plaintiff as receiver and the intervener as defendant.

The court, among other things, found that the plaintiff was the duly appointed, qualified, and acting receiver of the Western Food Products Company; that at no time had defendant Olive B. Allen loaned the Western Food Products Company the sum of $3,400, or any other sum; and that the Western Food Products Company did not execute and deliver to the said Olive B. Allen its promissory note in writing in the sum of $3,400 on the said 6th day of January, 1923, or any promissory note for any sum on said date, nor did the said Olive B. Allen at any time by virtue of said warehouse receipt have any interest, lien, or claim upon goods and property described in the complaint or any portion thereof, nor did the Western Food Products Company at any time pay any interest to the said Olive B. Allen upon her alleged promissory note. There are other findings, but in our judgment it is not necessary to consider such additional findings.

By the complaint in intervention the title to the property in controversy was admitted to be in the Western Food Products Company, subject only to the claim of the intervener for the payment of the balance claimed to be due on the note held by her against that company.

Two questions only are discussed in the briefs of counsel— in fact, only one by attorneys for respondent. First, was the

court without jurisdiction to make the order appointing plaintiff receiver? Second, is the finding of the court that the intervener had not loaned money to the products company contrary to the weight of the evidence? It is the theory and contention of the plaintiff that the intervener never at any time loaned money to the products company, but that the money now claimed to be due her from the products company was loaned by her to her son-in-law, E. B. Fredricks. On the other hand it is the theory and contention of the intervener that not only the great weight of the evidence but, in fact, the undisputed evidence in the case supports the view that she loaned the money to the products company and received as evidence of such loan the promissory note for the amount, due 5 months after January 6, 1923.

It appears without dispute that E. B. Fredricks was secretary treasurer and general manager of the products company at the time of the appointment of the receiver and had held such relationship to the company at all times after January 1, 1920. It is likewise undisputed that he, as such general manager, had authority to borrow money, to repay same, and to conduct the general business of the corporation. It further appears without any substantial dispute that $3,400 of intervener's money found its way into the treasury of the products company between November 1, 1922, and January 6, 1923. The controversy that divides the parties here is whether the money was loaned by the intervener to her son-in-law, E. B. Fredricks, and he in turn loaned the money to the products company, and hence no contractual relation existed between the products company and the intervener, or whether the intervener loaned the money to the products company.

The complaint in intervention presents a defense in equity in that the intervener seeks a judgment of the court protecting her lien or claim evidenced by the transfer to her of the warehouse receipt. Had the goods in controversy not been

disposed of by stipulation, and had the court found the issues in favor of the intervener, its judgment necessarily would have been that the goods be sold under the lien created by the warehouse receipt and the intervener's claim paid out of the proceeds, and that any balance, if there was a balance, should be turned over to the plaintiff as receiver. The effect of the stipulation was to relieve the court of the duty of decreeing a sale of the property and to permit the parties by their own agreement under the stipulation to convert the goods into money and leave sufficient thereof in the custody of the court to be decreed to the party found to be entitled to the same. In other words, the parties by the stipulation provided the means by which the intervener's claim could be foreclosed if the court had found in her favor. Relief in equity thus being sought, we are required to weigh the evidence relating to or bearing upon the facts challenged by the assignment of error and determine from such consideration whether the findings of the court are contrary to the weight of the evidence.

Appellate courts are loath to disturb findings of trial courts made on disputed testimony. The trial courts have the witnesses personally present before them and thus have opportunity to observe their demeanor. They are thus, ordinarily, better able to determine what weight should be given to the evidence of such witnesses than are reviewing courts from a mere reading of the record. However, a careful reading of the record in this case in our judgment leaves no doubt that the great weight of the evidence, not to say the undisputed evidence, supports the contention of the intervener. We have pointed out that the testimony leaves no doubt that the money of Mrs. Allen was received either directly from her by the products company or through the medium of her son-in-law. One of two things is without dispute. Either Fredricks borrowed the money from Mrs. Allen or the products company borrowed it. The testimony of Mrs. Allen is that

Mr. Fredricks, acting as the general manager of the corporation, borrowed the money from her. The testimony of Mrs. Fredricks, intervener's daughter, is to the same effect. The testimony of Mr. Fredricks is likewise the same. The testimony of Mrs. N. R. Morris, apparently a disinterested witness, is to the effect that on the night of January 6, 1923, she was at the home of Mr. and Mrs. Fredricks in an apartment in Salt Lake City; that Mrs. Allen was present at that time; that she, Mrs. Morris, was ill and lying down at the time; that she heard Mrs. Allen tell Mr. Fredricks that she would lend his company money; that she did not hear the amount stated; that she saw Mr. Fredricks give Mrs. Allen what appeared to be a note; and that thereafter, on the day following, Mrs. Allen left for the state of California. Charles Hoerner, president and also a director of the Western Food Products Company, and a witness adverse to the claims of the intervener in this action, testified thus (we quote from the bill of exceptions) :

"Q. Did Mr. Fredericks tell you at any time that he borrowed money from O. B. Allen? A.. He never said it to me.

"The Court. Did you know about it? A. He told me he had borrowed money but never mentioned any name where he got it.

"Q. That he borrowed money? A. That he borrowed money, yes, but he never mentioned the name. * * *

"Q. What did he say about it? A. He told me he borrowed some money and put it into the company."

Mr. Jacob Dorr, also a director and a witness called on behalf of plaintiff, testified (we again quote from the bill of exceptions) :

"Q. Now, you have seen, or you knew of the $3,400 being loaned to the company in January, didn't you, January 23d? * * * A. That is neither here nor there.

"Q. I am asking you, did you know of any money, $3,400, being loaned to the company, either by Mr. Fredricks or any one else? A. I got a statement from Mr. Fredricks.

"Q. Answer yes or no. A. Yes, I know that."

The witness further testified that he received a statement early in January, 1923, which showed the indebtedness of the company. He then testified (quoting further from the bill of exceptions) :

"Now, when you got this Exhibit F—you received this Exhibit F or a copy of it, did you? A. Yes, I got this.

"Q. And you saw $3,685 as apparently loaned to the company by E. B. Fredricks? A. Yes, sir.

"Q. You knew at that time that meant an indebtedness of the company of $3,685, didn't you? A. At what time?

"Q. At the time you got this statement? A. At that time, yes, sir.

"Q. And, of course, you understood that it would not be any larger or smaller if it was owned by a dozen people, would it? A. I understand that.

"Q. And when you got this statement you didn't have any investigation, did you? A. About this?

"Q. About this $3,685. A. I asked Mr. Fredricks where he got that money from?

"Q. What did he tell you? A. He said, 'Some I got from my mother-in-law.' "

It thus apears that Mr. Hoerner and Mr. Dorr, who were directors in addition to Mr. Fredricks, knew that Mr. Fredricks was borrowing money for and on behalf of the corporation, and Mr. Dorr that he was receiving at least some of that money from his mother-in-law, Mrs. Allen, the intervener herein. The only testimony in the record disputing the claim of the intervener that she loaned the money direct to the products company is the fact that the indebtedness was carried on the books of the company in favor of her son-in-law, E. B. Fredricks. It nowhere appears that Mrs. Allen knew anything about entries made on the books of the corporation further than that she had requested Mr. Fredricks that her name be not placed on the books by reason of some domestic trouble that she was then having with her husband. Entries on the books could in no way be binding on the intervener, as she was not a party to the proceed-

ing or arrangement, and especially in view of the admitted facts by both Mr. Hoerner and Mr. Dorr that they knew that Mr. Fredricks was borrowing money for and on behalf of the corporation, and Mr. Dorr knew that he was receiving that money from the intervener.

The note was past due at the time the warehouse receipt was delivered to the intervener. Such fact constituted a valuable consideration for the transfer and delivery of the warehouse receipt as security for the unpaid balance on her promissory note. Comp. Laws Utah 1917, § 6258.

There was some testimony apparently relied on by the plaintiff as discrediting the testimony of the intervener and her witnesses respecting the note which the intervener had evidencing the indebtedness claimed by her. It appears that the note bearing date January 6, 1923, had in some way become misplaced. The intervener's testimony is to the effect that she made a diligent search for that note, and, not being able to find it, in the latter part of November, 1923, five other notes were given her by the products company executed by E. B. Fredricks as general manager. The total of the notes amounted to $3,400. These notes were dated corresponding to the dates that the respective amounts making the $3,400 were loaned or deposited to the credit of the products corporation. Afterwards the original note was found by the intervener, and her explanation of the finding of that note is strongly consistent with the fact that women are known to carry valuables in a hand bag and forget that they have ever placed such valuables therein. Her testimony is that in emptying the hand bag after the execution of the five notes she found the original note in a side pocket of the hand bag, and the note gave every evidence of being a genuine note and one executed on the date it bears.

We are clearly convinced that not only the great weight of the evidence but practically the undisputed evidence, supports the claim of the intervener that she loaned the money

to the products company, and that that company was indebted to her on the past-due note at the date the warehouse receipt was delivered to her.

It might not be amiss to add to the foregoing that it may be seriously doubted whether, under the particular state of facts as disclosed by this record, the plaintiff should have been awarded judgment for possession of the property in question even if the intervener had not appeared in the action. The Legislature of this state has adopted what is known as the "Uniform Warehouse Receipt Act." Comp. Laws Utah 1917, title 113. That act sets forth at length the duties imposed upon and the obligations of a warehouseman in the storage of goods and the issuance of either negotiable or nonnegotiable receipts for the goods so stored; and it likewise affords warehousemen issuing such receipts certain protection during the time that such receipts are outstanding. It appears that E. B. Fredricks, the general manager in control of the business of the corporation, was authorized by custom and by reason of his general management of the business to store the goods with the Tyng Warehouse Company and to cause to be issued a warehouse receipt for the goods so stored. Plaintiff did not, prior to the institution of this action, tender the receipt to the warehouse company; neither did he indicate in his complaint that he would protect the warehouse company against any damage resulting from the fact of having issued a warehouse receipt; nor did he make the holder of the receipt a party to the action, but based his action solely upon the claim that the goods were the property of the plaintiff as receiver of the products company, and that they were wrongfully withheld from him by the warehouse company. It is provided in Comp. Laws Utah 1917, § 6225, one of the sections of the chapter constituting the Warehouse Receipt Act, that the goods stored in a warehouse cannot be attached by garnishment or otherwise be levied upon under an execution unless the receipt be first surrendered to the warehouseman or its negotiation enjoined. For a construction of this section, see

the opinion in *Kershaw* v. *Booth Fisheries Co.*, 177 Ill. App. 117; 3 U. L. A. § 25.

It is unnecessary to consider the other questions discussed in the briefs of counsel.

It follows from what has been said that the judgment of the district court must be reversed and the cause remanded to that court, with directions to make findings of fact and conclusions of law and enter judgment in conformity with the views herein expressed. Such is the order. Appellant to recover her costs.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.