HARRY SCHILLING, Plaintiff-Appellee, *v.* A. L. BOOK, d/b/a A. L. Book & Co., *et al.*, Defendants-Appellants.

Third District    No. 79-22

Opinion filed May 16, 1980.—Rehearing denied July 7, 1980.

Robert W. Boyd, of Kankakee, for appellants.

Christopher W. Bohlen and Paul F. Blanke, both of Kankakee, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendants A. L. Book, d/b/a A. L. Book and Co. and d/b/a Kankakee Elevator (hereinafter Book) and Insurance Company of North America (hereinafter INA) appeal from a judgment entered against them by the court in the amount of $29,273.58, following a directed verdict.

Plaintiff Harry Schilling had filed an action against Book, as warehouseman, and against INA, as surety on the warehouseman's bond, for conversion of grain deposited with Book.

The central issue at trial was whether a proper and sufficient demand for delivery of the grain had been made by Schilling to Book. The court, after hearing all the evidence, granted plaintiff Schilling's motion for a directed verdict against both Book and INA. On this appeal, the defendants raise the following issues: (1) whether the court erred in finding that an administrative regulation of the Department of Agriculture was invalid as a result of its conflict with the statutory provisions governing warehousing; (2) whether the plaintiff's evidence showed a valid and sufficient offer to surrender the warehouse receipt; (3) whether the defendant, by his conduct, committed an anticipatory breach of the contract, excusing further performance by the plaintiff; (4) whether the entry of a directed verdict was proper in light of conflicts in the evidence; and (5) whether the court properly entered judgment on the surety bond.

The record discloses that in late November 1972, Harry Schilling deposited soybeans in a warehouse operated by defendant Book. Schilling received a negotiable warehouse receipt for the grain. At the time of the deposit, Book was a licensed warehouseman, bonded by INA as surety. From that time until May 30, 1973, Schilling and Book had a number of discussions concerning the timing of the sale of the grain. Plaintiff Schilling wrote Book on June 1, 1973, demanding that Book buy the grain for the then current market price of $11.40 per bushel. Book responded, reminding Schilling that he had previously purchased the grain under their prior oral contract of sale at $7 per bushel. Discussions and correspondence grew more acrimonious thereafter. Then, on August 1, 1973, Schilling, by his attorney, served a formal written demand for delivery on Book, stating that he would appear on August 7 to take delivery of his grain. The written demand also informed Book that Schilling would surrender his warehouse receipt upon delivery and that he would tender and pay the warehouseman's lien and execute a receipt for the delivered grain.

On August 7, Schilling, his attorney, a licensed grain inspector, and a grain truck driver arrived at Book's grain elevator. Schilling's attorney showed Book the endorsed warehouse receipt and demanded delivery of the grain. Book responded by informing Schilling and his attorney that he would not give them the grain until the warehouse receipt was returned to him and until the lien charges had been paid. The warehouse receipt, itself, in pertinent part states: "Upon the return of this receipt properly indorsed, and payment of the warehouseman's lien claimed hereon, said grain or grain of the same or better grade will be delivered to the above named depositor or his order." Schilling, by his attorney, refused to

surrender the receipt prior to actual delivery. Schilling did offer several times to return the receipt, with appropriate endorsements, when the delivery of the grain had been completed. When this offer was refused, Schilling's attorney offered to surrender the receipt to a third party to hold until the grain was delivered. Book refused any such compromise and denied Schilling's request to allow inspection of the grain. Book demanded that the receipt would have to be surrendered and cancelled and lien charges paid prior to delivery of the grain. The parties were unable to reach agreement and Schilling, with his party, left the elevator premises. He later filed suit for conversion. It was agreed by the parties that as of August 7, 1973, the value of the soybeans was $9.05 per bushel. The trial was held before a jury, but at the close of all the evidence the court entered a directed verdict for plaintiff Schilling in the amount of $29,273.58. Book and INA appeal from the judgments entered.

Statutory provisions governing the warehousing of agricultural products are set forth in the United States Warehouse Act (7 U.S.C. §241 et seq. (1976)) and in regulations promulgated by the Secretary of Agriculture under that Act (7 U.S.C. §268 (1976)). (See also Ill. Rev. Stat. 1977, ch. 114, par. 214.1 et seq.) A key issue at trial in this cause was an apparent conflict between the statutory provisions and the regulations as regards a warehouseman's obligation to make delivery upon a negotiable receipt. Section 21 of the Act (7 U.S.C. §262 (1976)) states:

> "That a warehouseman conducting a warehouse licensed under this Act, in the absence of some lawful excuse, shall, without unnecessary delay, deliver the agricultural products stored therein upon a demand made either by the holder of a receipt for such agricultural products or by the depositor thereof if such demand be accompanied with (a) an offer to satisfy the warehouseman's lien; (b) an offer to surrender the receipt, if negotiable, with such indorsements as would be necessary for the negotiation of the receipts; and (c) a readiness and willingness to sign, when the products are delivered, an acknowledgement that they have been delivered if such signature is requested by the warehouseman."

Plaintiff Schilling argues, and the trial court found, that section 21's requirement for a demand accompanied by an "offer to surrender the receipt" was the applicable standard to be applied in the instant case. The defendant argues that the appropriate standard, setting forth a warehouseman's obligations, is that found in the administrative regulations promulgated by the Secretary of Agriculture under the Warehouse Act. Those regulations, in pertinent part, stated:

> "Except as permitted by law or by the regulations in this part a warehouseman shall not deliver grain for which he has issued a negotiable receipt until the receipt has been returned to him and

canceled * * *." (Regulations for Grain Warehouses, section 102—24, U.S.D.A., F.R. 15730, as amended, 30 F.R. 8093.)

Defendant Book asserts, based upon this regulation, that a warehouseman has no obligation to deliver grain stored by him and covered by a negotiable receipt until the receipt has been returned to him and cancelled. The warehouse receipt issued by Book to Schilling contained language based upon the regulations.

The trial court found that the regulation, requiring surrender of the receipt prior to delivery, was in conflict with the statute, requiring only an offer to surrender prior to delivery. Therefore, the court found that the statute governs and it held the regulation invalid insofar as it conflicted with the statutory provision. We agree.

■■ Defendants assert that the trial court's ruling contravenes the accepted presumption of validity which attaches to administrative regulations. The defense argues, citing our opinion in *Du-Mont Ventilating Co. v. Department of Revenue* (1977), 52 Ill. App. 3d 59, 367 N.E.2d 532, that such long-standing uniform construction of a statute by executive officers must be given great weight in judicial interpretation of the statute. While the validity and correctness of the principle cited is beyond doubt, the question in the instant case is its applicability. Both in the *Du-Mont Ventilating Co.* case and in the case we relied on therein (*O'Brien v. City of Chicago* (1952), 347 Ill. App. 45, 105 N.E.2d 917) it was noted that any such presumption does not apply when a regulation contravenes the express language of a statute. In such cases of conflict, the statute governs and the regulation is invalid. (*People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322, 90 N.E.2d 729.) In the instant case, as the circuit court found, there is a direct conflict as to when a warehouseman is required to deliver stored agricultural products covered by a negotiable warehouse receipt. As noted previously, the statute in pertinent part requires only an offer to surrender the receipt while the regulations require the actual surrender of the receipt and its cancellation. The conflict is obvious, direct and irreconcilable. Therefore, the statute governs.

The defense reliance upon two Illinois cases with respect to interpretation of the Federal statute is not persuasive. (See *Hartman v. Western Cold Storage Co.* (1914), 190 Ill. App. 182; *Kershaw v. Booth Fisheries Co.* (1913), 177 Ill. App. 117.) The *Hartman* case dealt with section 8 of the Illinois Warehouse Act (Hurd's Rev. Stat. 1908, ch. 114, par. 248), patterned after section 8 of the Uniform Warehouse Receipts Act, which also forms the pattern for section 21 of the United States Warehouse Act (7 U.S.C. §262 (1976)). The court in *Hartman* held that the plaintiff was not entitled to judgment for trover and conversion where he had not satisfied the statutory requirement of offering to return the warehouse receipt prior to delivery. (190 Ill. App. 182, 184.) While the

opinion does state that a warehouseman would not be authorized to deliver until the receipt has been returned and cancelled, this dicta is of questionable correctness, given the facts therein and the language of the statute, and, in any event, has its basis in sections 11 and 25 of the then existing Illinois Warehouse Act. (Ill. Rev. Stat. 1907, ch. 114, pars. 243, 251, 257, 265.) No analogous sections are to be found in the United States Warehouse Act governing the instant case. The *Kershaw* case was also based upon section 25 of the since repealed Illinois Warehouse Act (Hurd's Rev. Stat. 1908, ch. 114, par. 265), which has no counterpart in the existing Federal statute governing such transactions. We should note that the Federal statute with regard to cancellation of a receipt by a warehouseman states that the warehouseman "shall plainly cancel upon the face thereof each receipt returned to him upon delivery by him of the agricultural products for which the receipt was issued." (7 U.S.C. §263 (1976).) Thus, like section 21, this section contemplates return and cancellation after delivery.

■■ Having determined that an owner need not surrender the negotiable receipt to the warehouseman until delivery, under the statute, and that all that is required under section 21(b) is an offer to surrender with such endorsements as would be necessary for negotiation, we turn to the evidence as to the offer. The uncontradicted evidence in the record indicates that Schilling, by his attorney, offered to return the receipt, with appropriate endorsements, when they were at the warehouse on August 7, making demand for delivery. Such demand and offer satisfied the requirements of section 21(b) so far as the warehouse receipt is concerned. The evidence clearly established a valid and sufficient offer to surrender the receipt on the part of the plaintiff Schilling. It is of no significance that the offer came from his attorney, with him standing by, rather than directly from him.

The record is also clear that defendant Book's position throughout the discussions on August 7, both before and after the offer to surrender the receipt after delivery, was that he would not deliver the grain until the receipt was actually surrendered and cancelled and until the lien charges had been paid. Book's position, as noted previously, was apparently based upon the warehouse receipt itself, which was in accord with the return requirement found in the regulations.

In addition to the requirement of an offer to surrender the receipt with necessary endorsements, the statute also requires that the demand for delivery of the grain be accompanied by an offer to satisfy the warehouseman's lien. (7 U.S.C. §262(a) (1976).) The evidence at trial was contradictory on the question of whether this offer was made.

■■ Book denied any such offer was made on August 7, while Schilling's evidence indicated that his attorney made such an offer. Despite this

conflict in the evidence, the trial court entered a directed verdict for Schilling. Two bases for that action were set forth. The court found the written demand of August 1, with its offers therein, sufficient and, also, it found that Book's conduct in refusing to deliver until the receipt was surrendered operated as a repudiation or renunciation of the contract such that Schilling was relieved of his obligation to make an offer to satisfy the warehouseman's lien. On the basis of these findings, it entered the directed verdict. The demand letter, sent a week prior to the actual demand for delivery at the warehouse, was not sufficient to satisfy the plaintiff's obligations under the statute. That letter demanded possession of the grain, and it stated that Schilling would appear, at a specified future date, to take delivery. The letter also stated that at that specified future date the receipt would be surrendered upon delivery and the lien would be satisfied. The letter, in substance, was a demand for future delivery and a statement of intention to make the necessary offers at a specified date in the future. The letter did not contain offers to satisfy the lien or to surrender the receipt such as would satisfy the statute. Schilling could not have expected to arrive at the warehouse and take delivery on the basis of the letter alone. A warehouseman faced with such a letter has no assurance that the person demanding delivery has possession of the receipt or that he is ready and able to satisfy the lien. The offers should have been made at the time actual delivery was demanded, that being August 7 in the instant case. The written letter, prior to demand for immediate delivery, was not sufficient to establish that the required offers had been made.

■ Neither can we agree with the trial court that Book, by his statements and conduct, renounced the contract so that Schilling's required offer to satisfy the warehousemen's lien was excused. It is established that, unless justified, a statement to a promisee by a promisor that the promisor will not perform his contractual duties constitutes an anticipatory repudiation of the contract. (*Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 104, 373 N.E.2d 863.) It also established that:

> " ' * * * a renunciation or repudiation of a contract before the time for performance, which amounts to a refusal to perform it at any time, gives the adverse party the option to treat the entire contract as broken and to sue immediately for damages as for a total breach. There is no necessity in such case for a tender performance, or compliance with conditions precedent, or waiting for the time of performance to arrive, although this is optional.'

In essence, the repudiating promissor excuses the promisee from fulfilling the condition precedent." (58 Ill. App. 3d 100, 106.)

The plaintiff Schilling, relying upon the above rules, argues that Book's actions, in refusing to deliver the grain until the receipt was returned and the lien satisfied, constituted a refusal to perform at any time, and as such a repudiation or renunciation of the contract. Under the facts and circumstances in the instant case, we find application of these rules unwarranted. Book at no time stated that he would not perform his duty of delivering the grain, under the contract, nor did he ever refuse to deliver at any time. According to his testimony and to that of plaintiff's witnesses, Book repeatedly stated his willingness to perform his obligation to deliver, conditioned only upon satisfaction of the terms of the contract by plaintiff, which terms he interpreted as requiring surrender of the receipt and satisfaction of the lien, prior to delivery. As has been noted already, his position was supported by the regulations and by the express terms of the contract between the parties, being the negotiable warehouse receipt. (See also Ill. Rev. Stat. 1971, ch. 26, par. 7—403(2).) There is nothing to dispute Book's good faith reliance upon the contract terms or the regulations in refusing to deliver until the conditions were satisfied. It must be accepted that the receipt, as contract, was made subject to the provisions of the Warehouse Act and the regulations, and we have determined that the Act's provisions supersede the contradictory regulations and contract provision. However, such subsequent judicial determination does not operate to transform into a renunciation or repudiation what, at the time, was a good-faith refusal to perform based upon the express terms of the warehouse receipt governing the parties' transaction. If Book was wrong in his interpretation of the contract, and we have determined that he was, then his refusal, in the face of a sufficient demand, constituted a breach of the contract. Any such breach, however, would not establish his renunciation or repudiation of the contract so as to excuse the required offers and demand by the plaintiff Schilling. Both the *Builder's Concrete* case and that relied upon by the trial court (*Osgood v. Skinner* (1904), 211 Ill. 229, 71 N.E. 869) in finding a renunciation or repudiation involve express renunciations of contracts by one party, excusing further performance by the other party. No similar express renunciation was ever made by the defendant Book in the instant case. Book expressed a willingness to deliver, as he was bound to, but there existed a good faith dispute over Schilling's obligations prior to such a delivery. Under circumstances present in this case, there was no renunciation such that Schilling was relieved of his obligation under the statute to make an offer to satisfy the warehouseman's lien. The court erred in finding that obligation excused.

■■ Having concluded that the trial court erred in finding the written letter sufficient to establish the required offers and in finding that the offers were excused by defendant's renunciation of the contract, we are

faced with the conflicting evidence in the record as to whether the offer to satisfy the lien was made on August 7. The trial court should enter a directed verdict "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In the instant case, to recover for conversion of the grain it was necessary for plaintiff Schilling to prove that he had made a demand upon defendant and that demand to deliver had been accompanied by (a) an offer to satisfy the warehouseman's lien charges and (b) an offer to surrender the receipt, with such endorsements as necessary for negotiation. Plaintiff would also then have to prove defendant's refusal to deliver. While there is no dispute as to condition (b) and the defendant's refusal to deliver, there is a dispute in the evidence as to whether condition (a) was satisfied by plaintiff Schilling. When the evidence is viewed in its aspect most favorable to Book, as it must be, it must be concluded that no such offer, as was required, was made. Therefore, entry of the directed verdict was error as the issues ought to have been submitted to the jury. The cause will be remanded for a new trial.

■■ If, upon remandment and retrial, Book is found liable for conversion of the grain, the INA, as surety, is also liable for damages to plaintiff on its surety bond. The Act provides that a person injured by a breach of obligations under the Act, which are covered by a surety bond, can sue on the bond. (7 U.S.C. §249 (1976).) If it is determined that Book breached his obligations under the Act by his refusal to deliver in the face of sufficient demand, then he would not have faithfully performed his duties and obligations under the Act and the regulations. The surety, under the terms of the bond, is liable for the insured's lack of faithful performance. The defense argument that Book's reliance on the regulations operates to negate liability on the surety is not persuasive.

The cause is reversed and remanded for a new trial.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.