SIXTH DIVISION
May 19, 2006

No. 1-04-3280

| | | |
|---|---|---|
| HAWTHORNE RACE COURSE, INC., and NATIONAL JOCKEY CLUB, | ) ) ) | Appeal from the Circuit Court of Cook County |
|        Plaintiffs-Appellants, | ) ) | |
|     v. | ) ) | |
| ILLINOIS RACING BOARD, ILLINOIS THOROUGHBRED HORSEMEN'S ASSOCIATION, ILLINOIS HARNESS HORSEMEN'S ASSOCIATION, ARLINGTON PARK RACE COURSE, LLC, BALMORAL RACING CLUB, INC., FAIRMOUNT PARK, INC., ASSOCIATES RACING ASSOCIATION, INC., MAYWOOD PARK TROTTING ASSOCIATION, INC., EGYPTIAN TROTTING ASSOCIATION, INC., and SUBURBAN DOWNS, INC., | ) ) ) ) ) ) ) ) ) ) ) | Honorable Stephen Schiller, |
|        Defendants-Appellees. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This case involves interpretation of an odd provision in the Illinois Horse Racing Act of 1975 (the Act) (230 ILCS 5/1 *et seq.* (West 2004)).  Licensees, who collect the bets and conduct the races, split a portion of the wagers with the horsemen, who own, train and race the horses.  The Act specifies the allocation of the total wagered.  In 1995 the legislature decided to allow betting on simulcast races, where bettors at a host track bet on races run at a different track and broadcast onto a screen at the host track.  Horsemen persuaded the legislature to allocate a larger portion of the earnings from simulcast races to the

1-04-3280

horsemen.  The licensees, in turn, persuaded the legislature to allow recapture of some of the horsemen's share if the take from live races fell by a specified percentage from 1994 levels.  This case involves the calculation of recapture.

In 1994 National Jockey Club (NJC), a licensee, conducted races at Sportsman's Park, while Hawthorne Race Course, Inc. (HRC), another licensee, conducted races across the street at Hawthorne Race Course (Hawthorne).  In 2002 NJC merged with HRC, and beginning in 2003 both licensees ran all their races at Hawthorne.  The Illinois Racing Board (Board) held that the Act did not permit a calculation of recapture based on a comparison of races NJC ran at Hawthorne with the races run at Sportsman's Park in 1994.  Under the Board's decision, NJC and HRC recaptured much less in 2004 than they recaptured in prior years.

NJC and HRC sued for administrative review of the Board's decision.  Two horsemen's associations and licensees at other racetracks in Illinois joined the Board as parties defendant. The trial court upheld the Board's decision.  NJC and HRC now appeal.  We find that the Board properly applied the statutory formula for recapture, and therefore we affirm.

BACKGROUND

Illinois permits pari-mutuel wagering on horse races.  230 ILCS 5/9(a) (West 2004).  For pari-mutuel wagering on a race, a person licensed to conduct the race collects all bets on the race and distributes most of the money collected to those who won

1-04-3280

their bets.  The pool of all bets on a race is the "handle" for that race.  <u>Balmoral Racing Club, Inc. v. Gonzales</u>, 338 Ill. App. 3d 478, 480 (2003).  Before distributing the winnings, the licensee appropriates the "takeout," a portion of the handle distributed to state and local governments, the horsemen, and the licensees.  M. Bishop, *And They're Off: The Legality of Interstate Pari-mutuel Wagering and Its Impact on the Thoroughbred Horse Industry*, 89 Ky. L.J. 711, 716 (2001).  Under the approved formula for distribution of the handle from off-track betting, licensees receive 75% of the takeout remaining after taxes, while horsemen receive only 25% of that part of the takeout.

In 1995 a new law came into effect, permitting bettors at a host track to bet on races run at other tracks and simulcast in the host track.  Horsemen won the right to receive 50% of the takeout after taxes from simulcast wagering.  See 230 ILCS 5/26(g)(5), (g)(7) (West 2004).  Licensees anticipated that the handle from races run at the host racetracks would decrease as bettors shifted their bets to the races simulcast from other tracks.  Because licensees received a lesser portion of the handle from simulcast races, they sought to protect themselves against potential decreases in revenue.  They persuaded the legislature to adopt a provision permitting recapture from horsemen of part of the expected decrease in the handle on live races.

1-04-3280

Section 26(g)(13) of the Act provides:

"[I]n the event that the total Illinois pari-mutuel handle on Illinois horse races at all wagering facilities in any calendar year is less than 75% of the total Illinois pari-mutuel handle on Illinois horse races at all such wagering facilities for calendar year 1994, then each wagering facility that has an annual total Illinois pari-mutuel handle on Illinois horse races that is less than 75% of the total Illinois pari-mutuel handle on Illinois horse races at such wagering facility for calendar year 1994, shall be permitted to receive, from any amount otherwise payable to the purse account at the race track with which the wagering facility is affiliated in the succeeding calendar year, an amount equal to 2% of the differential in total Illinois pari-mutuel handle on Illinois horse races at the wagering facility between that calendar year in question and 1994 ***." 230 ILCS 5/26(g)(13) (West 2004).

The licensees guessed right. Since the introduction of simulcast races, the pari-mutuel handle on horse races run at tracks in Illinois has never reached 75% of the pari-mutuel handle on races run in Illinois in 1994. Thus, the recapture provision has taken effect every year.

The recapture for races run at Maywood Park in 1996

demonstrates the calculation of the amount of recapture. In 1994 and 1996, three different licensees ran races at Maywood on separate dates. The Board aggregated the total handle from the races all licensees ran at Maywood in 1994. The sum exceeded $100 million. The same three licensees ran all the races at Maywood in 1996. The total handle from all races at Maywood that year barely exceeded $53 million. Because the handle for all races run in Illinois amounted to less than 75% of the 1994 handle, and because the handle at all races at Maywood amounted to less than 75% of the 1994 handle for races at Maywood, the recapture provision established that "such wagering facility *** shall be permitted to receive *** an amount equal to 2% of the differential in total Illinois pari-mutuel handle on Illinois horse races at the wagering facility between that calendar year in question and 1994." 230 ILCS 5/26(g)(13) (West 2004). The differential between Maywood's 1994 handle and its 1996 handle on live races surpassed $47 million, so the statutory formula permitted recapture of more than $940,000. The licensees had the right to deduct that amount from the total of all purses awarded to horsemen who entered races run at Maywood in 1997.

In 1994 three licensees, including NJC, ran races at Sportsman's Park. That year the total handle for Sportsman's Park exceeded $143 million. In 1998 only NJC ran races at Sportsman's Park, and its total handle for those races fell short of $38 million. The differential of more than $105 million

established a recapture in excess of $2,100,000 for 1998, to be deducted from purses awarded in 1999.

Sportsman's Park underwent extensive renovation in 1999. No licensee ran any races at Sportsman's Park that year. NJC ran races at Hawthorne, across the street from Sportsman's Park, in 1999. Because the Act permits recapture only from the purses of races run at the same wagering facility, the Board's staff recommended disallowance of any recapture in 1999 for Sportsman's Park, despite the large differential between 1998 handle and 1994 handle for Sportsman's Park. The executive director overruled the staff and permitted NJC to deduct the $2,100,000 recapture for 1998 from purses NJC gave horsemen for races it ran at Hawthorne in 1999, just as though NJC had run those races at Sportsman's Park.

Sportsman's Park reopened for horse racing in 2000. The executive director allowed NJC to recapture part of the differential between the 1994 handle and the 1999 handle, using the races all three licensees ran at Sportsman's Park in 1994 and comparing that sum with the handle on races NJC alone ran at Hawthorne in 1999. Because the differential exceeded $110 million, the Board permitted NJC to recapture more than $2,200,000 from purses awarded to horsemen for races run at Sportsman's Park in 2000.

NJC again ran races at Sportsman's Park in 2001 and 2002. After the 2002 racing season, with the Board's encouragement, NJC

effectively merged with HRC. NJC and HRC both ran races at Hawthorne in 2003, and no one has run any horse races at Sportsman's Park since 2002. The Board calculated recapture for Sportsman's Park in 2002 and permitted NJC to deduct that amount from purses NJC awarded horsemen for races NJC ran at Hawthorne in 2003.

The Board's staff recommended calculating the recapture for 2004 by comparison of the total handle from all races run at Hawthorne in 2003 with the total handle from Hawthorne races in 1994. Thus, under the recommendation, the races NJC ran in 2003 increased the total 2003 handle at Hawthorne, and therefore those races reduced the total recapture awarded for Hawthorne. The staff recommended no award of recapture for Sportsman's Park, because no one ran races at Sportsman's Park in 2003.

NJC and HRC objected to the recommendations, arguing that the Board should compare the races NJC ran at Hawthorne in 2003 with the total handle from races all licensees ran at Sportsman's Park in 1994, and award NJC its own recapture based on that comparison. They also sought an award for Hawthorne of a separate recapture comparing the handle from races HRC alone ran in 2003 with the total handle from races all licensees ran at Hawthorne in 1994. NJC and HRC argued that they relied on prior decisions allowing them separate recapture when they decided to merge.

The Illinois Thoroughbred Horsemen's Association and the

1-04-3280

Illinois Harness Horsemen's Association supported the staff's recommendation and opposed the calculation of recapture NJC and HRC proposed. Licensees at other racetracks also supported the staff's recommendations.

After a hearing in January 2004, the Board agreed with the staff's recommendations. The chair explained that in the Board's view, the executive director improperly allowed Sportsman's Park a recapture for 2000 based on a comparison of the handle from races all licensees ran at Sportsman's Park in 1994 with the handle from races NJC ran at Hawthorne in 1999. The Board did not then review the executive director's decisions on recapture. According to the chair, 2003 "was the very first year that the Racing Board ever voted on recapture. Always before it was handled administratively by the Executive Director. So the Board never considered it."

The chair also found significantly changed circumstances from 2000 to 2004, and the change warranted differences in the calculation of recapture:

> "[In 2000, Sportsman's Park was] coming back in business, it was just one year, you were just off for that year and you were coming back. [The] Executive Director *** decided to be a nice guy and look the other way and give you the recapture in that year although it was clearly [denied in the staff's recommendation] correctly in the first place because

there was no racing at the Sportsman's Park racing

facility."

The chair also pointed out that when NJC explained its financial strength, in its application for 2003 racing dates, it based its revenue projection on a "wors[t] case scenario wherein [NJC] loses *** its recapture."  After the consolidation with HRC, NJC submitted to the Board a document in which it acknowledged that "issues have arisen as to whether NJC will be able to retain" its right to recapture.

The Board approved the staff's recommendation for calculation of recapture for 2003, recoverable from purses awarded in 2004.  Thus, the Board permitted no separate recapture for NJC, and it awarded a recapture for Hawthorne based on a comparison of the handle from races all licensees ran at Hawthorne in 2003 with the handle from races all licensees ran at Hawthorne in 1994.

NJC and HRC sued for administrative review of the Board's decision.  The Board filed a brief in support of its calculation of recapture.  The horsemen and the other licensees again supported the Board's position.  The trial court affirmed the Board's decision.  NJC and HRC now appeal.

ANALYSIS

This case presents a question of statutory interpretation. "[R]eviewing courts generally accord substantial deference to the interpretation placed on a statute by

1-04-3280

the agency charged with its administration and enforcement. [Citation.] An agency's statutory interpretation will be rejected if it is unreasonable or erroneous." Metropolitan Alliance of Police v. Illinois Labor Relations Board, Local Panel, 345 Ill. App. 3d 579, 586 (2003).

Section 26(g)(13) of the Act establishes the formula for calculation of annual recapture:

"[E]ach wagering facility that has an annual total Illinois pari-mutuel handle on Illinois horse races that is less than 75% of the total Illinois pari-mutuel handle on Illinois horse races at such wagering facility for calendar year 1994, shall be permitted to receive *** an amount equal to 2% of the differential in total Illinois pari-mutuel handle on Illinois horse races at the wagering facility between that calendar year in question and 1994 ***." 230 ILCS 5/26(g)(13) (West 2004).

The Act explicitly defines a "wagering facility" as "any location at which a licensee may accept or receive pari-mutuel wagers under this Act." 230 ILCS 5/3.22 (West 2004).

NJC argues that because it has a license to collect bets, it qualifies as a "wagering facility." Sportsman's Park cannot collect recapture, so it must not count as a wagering facility. They point to the Board's written rules, which provide:

˘10˘

1-04-3280

"Pursuant to Section 26(g)(13) of the Illinois
Horse Racing Act of 1975 ***, qualified licensed
Illinois wagering facilities are permitted to deduct an
amount equal to 2% of the difference between the
licensee's 1994 handle on Illinois races and its handle
on Illinois races in the year in question, from amounts
allocated or payable to purses in the succeeding year,
at the racetrack from which the wagering facility is
affiliated."  11 Ill. Adm. Code §213.10, as amended by
24 Ill. Reg. 17484 (eff. November 8, 2000).

The rules define "Purse Recapture" as "the amounts *** to be
deducted by each qualified wagering facility from amounts payable
to purses at the licensee's affiliated racetrack."  11 Ill. Adm.
Code §213.20, as amended by 24 Ill. Reg. 17484 (eff. November 8,
2000).

The reference in the rules to "licensed *** wagering
facilities" apparently identifies wagering facilities with
licensees.  Other licensees oppose appellants' construction of
the statute because the licensees at those racetracks had not
begun operating before 1994.  If we construe a "wagering
facility" as a licensee for calculation of the recapture, no one
gets any recapture for the sharp decline in handle from live
races at racetracks at which a new licensee, created after 1994,
now runs races.

The explicit definition of "wagering facility" cannot

˘11˘

support the construction appellants seek. The statute unequivocally defines a wagering facility as a location at which a licensee acts, explicitly distinguishing the licensees from the wagering facilities. When an administrative regulation conflicts with a statute, the statute controls. <u>Schilling v. Book</u>, 84 Ill. App. 3d 972, 976 (1980); <u>North Shore MRI Centre v. Department of Revenue</u>, 309 Ill. App. 3d 895, 899 (1999). Thus, the rule's apparent identification of licensees as wagering facilities cannot overcome the statute's distinction between locations that count as wagering facilities and the licensees who use those facilities.

Moreover, NJC has, since 1995, accepted recapture calculated on the basis of all races run by all licensees at Sportsman's Park in 1994. If a "wagering facility" in section 26(g)(13) referred to a licensee, NJC should have recaptured amounts based solely on its own handle from 1994. The administrative rule on its face restricts recapture to the difference between "the licensee's 1994 handle *** and its handle *** in the year in question." 11 Ill. Adm. Code §213.10, as amended by 24 Ill. Reg. 17484 (eff. November 8, 2000). The Board has always included handle from races other licensees ran at Sportsman's Park in 1994 as part of the basis for calculating recapture for Sportsman's Park. The Board predicated the calculation on its interpretation that a location, a racetrack, is a wagering facility, and a licensee is not. NJC has for years reaped the benefit of this

interpretation of the rule.  "A party who has accepted and retained the advantages of an order cannot be heard to attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated."  Zweifel Manufacturing Corp. v. City of Peoria, 11 Ill. 2d 489, 493 (1957).

Next, appellants claim that the Board established portability of recapture in its decisions allowing NJC recapture in 1999, 2000 and 2003.  In effect, appellants argue that the prior decisions operate as *res judicata* concerning the issue of NJC's right to recapture in 2004 based on its 2003 races.

> "[A] prior determination by an administrative body is not *res judicata* in subsequent proceedings before it.  [Citations.]  An administrative body has the power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding."  Hazelton v. Zoning Board of Appeals, 48 Ill. App. 3d 348, 351-52, 363 N.E.2d 44 (1977).

Also, as the chair pointed out, the Board played no part in the decisions awarding NJC recapture in 1999 and 2000.  The executive director, unreviewed, granted NJC recapture in those years.  The prior decisions do not collaterally estop the Board from distinguishing the circumstances in 2004 from the circumstances arising in prior years in which NJC obtained recapture.

In 1998 NJC ran races at Sportsman's Park, so the executive

director could compare the handle from those races with the handle from the races run at the same wagering facility in 1994. The calculation of recapture then followed the statutory formula. The formula established an amount of recapture for Sportsman's Park, but no licensee scheduled any races at that facility for 1999, during the track's extensive renovations. The executive director decided to allow NJC, as the sole licensee who ran races at Sportsman's Park in 1998, to deduct recapture from purses it awarded for races it ran at Hawthorne in 1999.

Similarly, in 2002 NJC ran races at Sportsman's Park, so the Board could compare the handle from those races with the handle from the races run at the same facility in 1994. The statutory formula again established an amount of recapture for Sportsman's Park. The Board decided to allow NJC, as the sole licensee who ran races at Sportsman's Park in 2002, to deduct recapture from purses it awarded for races it ran at Hawthorne in 2003. The decision apparently allows a limited kind of portability. As long as a licensee ran races at a facility where some licensees ran races in 1994, the statutory formula establishes a sum for recapture for that wagering facility. The Board's decision in 2003, and the executive director's decision in 1999, permit the licensee who ran the races at the wagering facility to recapture the statutory amount from purses it pays out the following year, even if the licensee runs its races at a different facility. The Board has never approved recapture calculated on the basis of a

comparison of the handle from races run at one facility with handle from races run at a different wagering facility in 1994.

In 2000 the executive director decided to permit NJC to recapture part of the purse it awarded for races scheduled at Sportsman's Park. To calculate the recapture, the director compared the handle from races all licensees ran at Sportsman's Park in 1994 with the handle from races NJC ran at Hawthorne in 1999. The Board found that no credible reading of the statute supported that calculation of recapture. We agree. If the director mistakenly treated NJC as a "wagering facility," he should have compared the handle on races NJC ran in 1999 with the handle on races NJC ran in 1994, rather than comparing the 1999 handle with the handle on all races all licensees ran at Sportsman's Park in 1994. The executive director apparently applied a kind of legal fiction, treating the races NJC ran at Hawthorne in 1999 exactly as though NJC ran them at Sportsman's Park. The chair best explained the 2000 decision as a bonus to NJC to help it defray the costs of renovating Sportsman's Park.

Thus, even if Board decisions could collaterally estop the Board from reconsidering issues it had decided, the Board's 2003 decision involved circumstances strikingly different from those presented in 2004. The Board could compare the handle from races run at Sportsman's Park in 2002 with the handle from races run at that wagering facility in 1994 to make the statutory calculation of the recapture it awarded in 2003. Because no one ran races at

Sportsman's Park in 2003, the Board had no basis for a calculation of recapture for Sportsman's Park in 2004 and, therefore, no amount for NJC to import to its new location. Appellants present no grounds for treating the executive director's mistake in 2000 as *res judicata* disallowing denial of recapture in 2004.

Appellants argue that the legislature's failure to amend the statute after 2000 shows that the executive director then interpreted the statute correctly. First, we note that the legislature allocated funds in 2000 to the horsemen to cover the amount deducted from all purses under the recapture provision. Thus, the legislature ensured that the horsemen did not suffer any detriment from the executive director's mistaken award to NJC in 2000.

As the chair points out, the Board had also in prior decisions treated a single location as a wagering facility and permitted no portability of the basis for recapture. In one case an operator of an off-track betting parlor moved its operations to a new location. The Board disallowed recapture because the new wagering facility had no 1994 handle to compare with current handle; the old location, which had in 1994 a certain handle, had no current operations and no current handle to compare with 1994 handle. The legislature's failure to amend did not approve decisions allowing portability any more than the same failure to amend approved the decisions denying portability for other

˘16˘

1-04-3280

wagering facilities.  Legislative inaction here provides no basis for disturbing the Board's decision.

Next, appellants claim public policy requires application of the formula they propose for calculation of their recapture.  The legislature expressly adopted the Act to:

>"(a) support and enhance Illinois' horse racing industry, which is a significant component within the agribusiness industry;
>
>(b) ensure that Illinois' horse racing industry remains competitive with neighboring states;
>
>(c) stimulate growth within Illinois' horse racing industry, thereby encouraging new investment and development to produce additional tax revenues and to create additional jobs;
>
>***
>
>[and] (e) encourage the breeding of thoroughbred and standardbred horses in this State[.]" 230 ILCS 5/1.2 (West 2004).

To remain competitive with racing in other states, Illinois racetracks must award horsemen purses sufficient to motivate them to race their best horses in Illinois.  The legislature designed the provisions of section 26 to allocate funds in a manner that best preserves the welfare of both the horsemen and the licensees who run races in Illinois.  The legislature created an explicit formula for determining the amount of recapture to deduct from

˘17˘

purses awarded to horsemen.  We see no reason to second-guess the legislature's formula.  Money not awarded as recapture remains in the purses awarded to horsemen and thereby supports the growth and development of the racing industry in Illinois.  We note that the other licensees support the Board's interpretation of the Act.  Public policy does not demand an award of recapture for a former wagering facility no longer used for horse racing.

Finally, appellants maintain that they relied on portability of recapture when they merged and therefore the court should estop the Board  from denying the recapture they seek.

> "Estoppel against public bodies is generally not favored and is allowed in only rare and unusual circumstances.  [Citations.]  The doctrine of estoppel is invoked against a public body only when it is necessary to prevent fraud and injustice."  Halleck v. County of Cook, 264 Ill. App. 3d 887, 893 (1994).

The plaintiff must show "an affirmative act on the part of the public entity and the inducement of substantial reliance by the affirmative act."  Gersch v. Department of Professional Regulation, 308 Ill. App. 3d 649, 660 (1999).

Here, appellants rely on three affirmative acts: the decisions permitting NJC recapture in 1999, 2000 and 2003.  The argument appears to restate the attempt to collaterally estop the Board from distinguishing the circumstances in 1999 and 2000 from the circumstances in 2004.  The Board's decisions do not have

1-04-3280

such *res judicata* effect.  Hazelton, 48 Ill. App. 3d at 351-52.

Moreover, the difference in circumstances renders unreasonable any reliance on the prior decisions as establishing that NJC would continue to receive recapture based on handle from races run at Sportsman's Park in 1994, even after NJC stopped running races at that facility.  The Board calculated recapture for 2003 by comparing handle from races at Sportsman's in 2002 with handle from races run by all licensees at the same wagering facility in 1994.  NJC could not reasonably rely on that decision as grounds for assuming it would continue to receive recapture when the Board could no longer use the handle from races run at Sportsman's Park to compare with the handle from races run at Sportsman's Park in 1994.  Similarly, the decision permitting recapture in 1999 for races run at Sportsman's Park in 1998 cannot lead reasonable persons to assume they could use races run at other locations as a basis for calculating recapture.

The executive director in 2000 permitted NJC to recapture an amount based on a comparison of races run at Hawthorne in 1999 with races run at Sportsman's Park in 1994.  But in that case the executive director treated all races NJC ran at Hawthorne in 1999 as though NJC ran them at Sportsman's Park.  The decision assisted NJC with its efforts to reopen Sportsman's Park following renovations.  NJC does not assert that any state official or anyone else affiliated with the Racing Board ever promised NJC, before the merger, that it would continue to

˘19˘

receive recapture based on a comparison of its races at Hawthorne with the races all licensees ran at Sportsman's Park in 1994. In the absence of reasonable reliance, estoppel cannot apply.

Also, we agree with the Board that NJC's documents regarding the merger show that NJC, to an extent, prepared for the possibility that the Board might not allow it to calculate recapture based on a comparison of the handle from races it alone ran at Hawthorne each year with the total handle from races all three licensees ran at Sportsman's Park in 1994. NJC and HRC have not proved that, when they merged, they actually relied on the calculation of recapture they now propose. If they had so relied the reliance was unreasonable because the circumstances after 2003 differed sharply from the circumstances in 1999, 2000 and 2003.

The Act explicitly directs the Board to calculate recapture for each location at which various licensees ran races, and not to calculate recapture for each individual licensee. The Board has consistently so calculated recapture, despite apparently inconsistent language in the Board's rules, which seem to identify licensees as wagering facilities. The Act, rather than the inconsistent rules, governs the proper calculation. The public policy of supporting the horse racing industry does not demand appropriation of the amounts appellants seek to recapture from horsemen. The decisions from 1999 and 2003, allowing a limited portability of properly calculated recapture, do not

1-04-3280

require an award of recapture for a former wagering facility no longer used for horse racing. Neither does the executive director's unreviewed error from 2000 bind the Board. NJC and HRC, when they merged, apparently did not rely on the continued calculation of recapture as though NJC continued to run its races at Sportsman's Park. If they did so rely, that reliance was unreasonable. Accordingly, we affirm the trial court's decision upholding the Board's calculation of recapture for 2003, to be recovered in 2004, for Hawthorne.

    Affirmed.

    FITZGERALD-SMITH and O'MALLEY, JJ., concur.